**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - x
```
                                   :

UNITED STATES OF AMERICA          :
                                        S1 09 Cr. 85 (JSR)
                                   :
        -v.-                            ECF CASE
                                   :

MARC DREIER,                       :

        Defendant.        :
```
- - - - - - - - - - - - - - - x

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF
### APPLICATION FOR CONSENT ORDER OF FORFEITURE

The Government respectfully submits this memorandum pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure in support of its application for a Consent Order of Forfeiture, ordering the forfeiture of $30,895,027.78 that GSO has agreed to remit to the United States in lieu of the United States seeking forfeiture of certain other assets of GSO.

In support of this application, the Government respectfully submits (1) two declarations (attached hereto as Exhibits A and B), dated March 13, 2009 and July 10, 2009, of Steven Yagoda, a Financial Analyst in the Asset Forfeiture Unit of the United States Attorney's Office for the Southern District of New York, and (2) the proposed Consent Order of Forfeiture (attached hereto as Exhibit C).[1]

---

[1]     The two Yagoda declarations are hereinafter denoted as the "March 13 Yagoda Declaration" or "March Yagoda Decl.," and the "July 10 Yagoda Declaration" or "July 10 Yagoda Decl.,"

## BACKGROUND

**A.** **Procedural History - Plea, Sentencing, and the Preliminary Order of Forfeiture**

Dreier was indicted on January 29, 2009 on seven counts: conspiracy to commit securities fraud and wire fraud, in violation of 18 U.S.C. § 371 (Count One); securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2 (Count Two); and wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Counts Three through Seven). On March 17, 2009, Dreier was charged in a Superseding Indictment, S1 09 Cr. 84 (the "Indictment"), which added a money laundering count (Count Eight), charging a violation of 18 U.S.C. § 1956.

On May 11, 2009, Dreier pled guilty, without a plea agreement, to Counts One through Eight of the Indictment. On July 13, 2009, he was sentenced and ordered to forfeit:

> (1) a sum of $746,690,000 in United States currency (the "Money Judgment"), representing the amount of proceeds obtained as a result of the fraud offenses alleged in Counts One through Seven, as well as property involved in the money laundering offense alleged in Count Eight; and

_____

respectively. Both declarations previously have been submitted in this case. The March 13 Yagoda Declaration was submitted in support of the Government's Ex Parte Application for a Post-Indictment Restraining Order, filed March 13, 2009. The July 10 Yagoda Declaration was submitted in support of the Government's Application for a Preliminary Order of Forfeiture Pursuant to Fed. R. Crim. P. 32.2, filed July 10, 2009.

(2)   the specific properties listed in Schedule A of
                    the Court's Preliminary Order of Forfeiture, dated July
                    13, 2009 (the "Preliminary Order of Forfeiture").

**B.    The 5966 Account**

          One of the specific properties included in the

Preliminary Order of Forfeiture was the contents of a bank

account at JPMorgan Chase, No. 36502055966 (the "5966 Account"),

which was held in the name of Dreier LLP.  As explained in the

July 10 Yagoda Declaration, this Account was one of the key

instruments used to facilitate Dreier's note fraud.  (July 10

Yagoda Decl. ¶¶ 5-15).  Nearly all of the proceeds from Dreier's

sale of fictitious notes were deposited into this account.  (July

10 Yagoda Decl. ¶ 5).  The Government has identified at least

approximately $681.8 million worth of deposits that were made

into this Account from the sale of fictitious notes between 2004

and 2008.  (July 10 Yagoda Decl. ¶ 8).

          One of the principal uses of funds in the 5966 Account

was to perpetuate the Ponzi scheme by paying principal, interest

and fees to prior purchasers of the fictitious notes.  (July 10

Yagoda Decl. ¶¶ 10-14).[2]

---

     [2]    The two other principal uses of the funds in the 5966
Account were: (1) to fund Dreier's extravagant lifestyle by
paying for artworks, homes, and other properties, and (2) to
improperly subsidize other Dreier LLP accounts, from which the
funds were disbursed to help pay for the large expenses of the
firm and Dreier's own personal expenses.  (July 10 Yagoda Decl.
¶¶ 10-14).

## C.  The GSO Facilities' Restrained Funds

This application for a Consent Order of Forfeiture relates to funds initially restrained pursuant to a restraining order, signed December 24, 2008.  The Honorable Jed S. Rakoff, sitting in Part I, signed this temporary, pre-indictment restraining order (the "December 24, 2008 Restraining Order"), upon an ex parte application by the Government.  On or about January 12, 2009, the Honorable Colleen McMahon, sitting in Part I, signed a consent order extending the December 24, 2008 Restraining Order by 45 days.  On or about February 26, 2009, this Court signed a Post-Indictment Consent Order for Extension of Restraining Order and Seizure of Property (the "February 26, 2009 Restraining Order"), extending the December 24, 2008 Restraining Order pending further order of the Court.

On or about March 13, 2009, the Court granted an ex parte application by the Government and entered a restraining order (the "March 13, 2009 Restraining Order") relating to certain assets of the following facilities:

(1) Foxe Basin CLO 2003, Ltd.

(2) GSO Offshore Multicurrency Facility (USD)

(together, the "Bank of America Trusteed GSO Facilities").  The March 13, 2009 Restraining Order clarified the scope of the Court's prior restraining order, entered on December 24, 2008.

As explained in the March 13 Yagoda Declaration, each of the Bank of America Trusteed GSO Facilities purchased, directly or indirectly, Dreier's fictitious promissory notes (the "Notes"). (March 13 Yagoda Decl. ¶ 9).[3]

From in or about March 2006 through in or about October 2008, the Bank of America Trusteed GSO Facilities and other GSO Facilities received transfers from the 5966 Account of what were purported to be interest and/or principal payments on the fictitious Notes. According to information provided by Bank of America and GSO, the GSO Facilities received:

(a)  Repayment of principal on account of the Notes (the "Note Fraud Principal"), and

(b)  Payment of interest and fees on account of the Notes in the amount of $30,895,027.78 (the "Note Fraud Profit");

(collectively, the "Note Fraud Funds"). Some of the Note Fraud Funds were deposited into the Bank of America Trusteed GSO Facilities' accounts at Bank of America (the "GSO Sub-Accounts"). (March 13 Yagoda Decl. ¶ 9). Between in or about September 2007 through in or about October 2008, the GSO Sub-Accounts received

---

[3]    The Bank of America Trusteed GSO Facilities are referred to in the March 13 Yagoda Declaration and the March 13, 2009 Restraining Order as the "GSO Facilities." In this application and the proposed Consent Order of Forfeiture, "GSO Facilities" refers to the Bank of America Trusteed GSO Facilities and all other entities controlled or managed by GSO Capital Partners, LP or one of its affiliates. "GSO" refers to GSO Capital Partners, LP, its affiliates, and the GSO Facilities.

at least the following amounts of Note Fraud Funds from the 5966
Account:

      (1)   Foxe Basin CLO 2003, Ltd.: $2,222,000.00

      (2)   GSO Offshore Multicurrency Facility:
           $33,187,990.61

(collectively, the "Restrained Funds").  (March 13 Yagoda Decl. ¶
9).

      After learning about Dreier's fraud, and in response to
the Court's entry of the December 24, 2008 Restraining Order,
Bank of America placed a portion of the Note Fraud Funds into the
sub-accounts listed below:

      (1)  Sub-Account Number  █████████6, held at Bank of
      America, in the name of Foxe Basin CLO 2003, Ltd.;

      (2)  Sub-Account Number  █████████8, held at Bank of
      America, in the name of GSO Offshore Multicurrency
      Facility (USD);

(together, the "GSO Sub-Accounts").  (March 13 Yagoda Decl. ¶ 9).

      The Restrained Funds (including the GSO Sub-Accounts)
were the subject of the Court's March 13, 2009 Restraining Order.
This Restraining Order prohibited, among other things, the
transfer, sale, assignment, pledge, hypothecation, encumbrance,
or disposition of the funds and other property on deposit in the
GSO Sub-Accounts.  It further prohibited any persons and entities
with knowledge of the order from causing "the value of the
Custodial Assets for any of the GSO Facilities to fall below the
amount of the Note Fraud Funds that the GSO Facilities received."

6

On July 13, 2009, the Court sentenced Dreier and signed the Preliminary Order of Forfeiture, imposing the Money Judgment and forfeiting Dreier's interest in the specific properties listed in the order.

At the request of GSO, the Government agreed to postpone including the Restrained Funds in its application for the Preliminary Order of Forfeiture. There were two reasons for this request: first, in order to allow GSO to attempt to jointly resolve any claims by this Office and the Dreier LLP Chapter 11 Bankruptcy Trustee, and second, in order to prevent unintended financial consequences that forfeiting the Restrained Funds could have on the GSO Facilities' financing agreements.

During the intervening months, the Government has engaged in numerous meetings and phone conversations with GSO and the Chapter 11 Bankruptcy Trustee in an effort to reach a joint resolution.

As explained below, the Government and GSO have reached an agreement regarding the Government's potential claims to the Restrained Funds and any other Note Fraud Funds that the GSO Facilities received. The Government and GSO reached this agreement more than one month ago but, at the request of the Chapter 11 Trustee and GSO, did not finalize their agreement in order to allow the Chapter 11 Trustee and GSO to reach a

settlement. The Government was recently advised that the Chapter 11 Trustee and GSO have reached an agreement.

### DISCUSSION

Federal Rule of Criminal Procedure 32.2(e) authorizes a court to enter an order of forfeiture or amend an existing order of forfeiture to include property that "(A) is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered; or (B) is substitute property that qualifies for forfeiture under an applicable statute."

The Government and GSO have reached an agreement regarding the Government's potential claims to the Restrained Funds and any other Note Fraud Funds that the GSO Facilities received. Pursuant to the proposed Consent Order of Forfeiture, GSO will disgorge $30,895,027.78 (the "Subject Property"), representing the amount of profits that the GSO Facilities received from the fictitious Notes, in lieu of the Government seeking forfeiture of the Restrained Funds. GSO will provide this amount to the Government through a check or wire, from any account(s) that GSO chooses, and GSO will consent to the forfeiture of these funds. Because the Subject Property represents proceeds obtained as a result of Dreier's fraud offenses and property involved in his money laundering offense,

it shall be applied towards the Money Judgment, in partial satisfaction thereof.

The agreement has been structured in this way for at least two reasons. First, the Government has agreed to seek forfeiture of the Subject Property in lieu of forfeiting the Restrained Funds in order to prevent GSO from suffering unintended financial consequences that forfeiture of the Restrained Funds could have on the GSO Facilities' financing agreements. Second, the Government is not seeking forfeiture up to the full amount of the Restrained Funds in order to prevent the GSO Facilities from becoming a victim of Dreier's offenses.

The Consent Order of Forfeiture provides, in pertinent part, that:

> 1. The Note Fraud Profits shall constitute all amounts received by GSO in excess of the amount of principal payments made to GSO on account of the Notes.
>
> 2. In order to disgorge the Note Fraud Profits, GSO shall remit to the United States Marshals Service ("USMS") the full amount of the Note Fraud Profits, totaling $30,895,027.78 (the "Subject Property"), by check or wire from one or more accounts to be designated by GSO in its sole discretion, no later than 45 days from the date that this Stipulation and Order is entered by the Court. The funds disgorged by GSO shall constitute the Note Fraud Profits received by GSO and shall not be deemed to constitute any principal payments made to GSO on account of the Notes. The Subject Property shall be forfeited in lieu of the Restrained Funds.
>
> 3. The February 26, 2009 Restraining Order and the March 13, 2009 Restraining Order are hereby vacated as to the Note Fraud Funds received by GSO. Subject to the payment described in paragraph 2 above, the

Government shall not seek forfeiture of the Restrained Funds.

4.  GSO consents to the forfeiture of the Subject Property and the same hereby is forfeited to the United States.

5.  Subject to the payment by GSO described in paragraph 2 above, the Government is hereby barred from asserting, or assisting others in asserting, any civil forfeiture claim against the Restrained Funds and any other Note Fraud Funds that were received by GSO.

6.  GSO is hereby barred from asserting, or assisting others in asserting, any claim against the Government or any of its agents and employees (including but not limited to the Department of Justice ("DOJ"), the USAO-SDNY, the USMS, and the United States Postal Service ("USPS")), in connection with or arising out of the seizure, restraint, and/or constructive possession of the Restrained Funds and the Subject Property, including, but not limited to, any claim that there was no probable cause to seize and/or forfeit the Subject Property, that GSO Facilities are prevailing parties, or that the GSO is entitled to attorney's fees or any award of interest.

7.  GSO represents that it is the sole owner of the Subject Property and agrees to hold harmless and indemnify the Government and its agents and employees (including but not limited to the DOJ, the USAO-SDNY, the USMS, and the USPS), from any and all claims in connection with or arising out of the seizure, restraint, and/or constructive possession of the Subject Property, including but not limited to any third-party claims of ownership of the Subject Property.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court enter the proposed Consent Order of

Forfeiture, ordering the forfeiture of the Subject Property to

the United States.

Dated:     December 23, 2009
           New York, New York


                         Respectfully submitted,

                         PREET BHARARA
                         United States Attorney for the
                         Southern District of New York
                         Attorney for the Plaintiff
                         United States of America



                 By:_____/s/_____
                     Sharon Cohen Levin
                     Anna E. Arreola
                     Jeffrey E. Alberts
                     Jonathan R. Streeter
                     Assistant United States Attorneys
                     (212) 637-1060/2218/1038/2272