OFFICE COPY



January 7, 2010

**By Hand**

The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street, Room 1340
New York, New York 10007

*United States v. Marc Dreier,*
S1 09 Cr. 85 (JSR)

The Honorable Miriam Goldman Cedarbaum
United States District Court
Southern District of New York
500 Pearl Street, Room 1330
New York, New York 10007

*SEC v. Dreier,*
08 Civ. 10617 (MGC)

The Honorable Stuart M. Bernstein, Chief Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Room 723
New York, New York 10004

*In re: Dreier LLP,* 08-15051 (SMB)
*In re: Marc S. Dreier,* 09-10371 (SMB)

Re: **Joint Hearing in the Above-Captioned Matters Scheduled for Tuesday, January 12, 2010**

Dear Your Honors:

The undersigned law firms are counsel to Fortress Investment Group LLC and its affiliated entities (collectively, "Fortress"), Concordia Advisors LLC ("Concordia"), Meyer Venture Partners, L.P. ("Meyer"), Eton Park Capital Management, L.P. ("Eton Park"), and Perella Weinberg Partners Capital Management, L.P. ("Perella Weinberg"), which are among the largest victims of the massive Ponzi scheme perpetrated by Marc Dreier ("Dreier"), and we submit this letter on behalf of our clients in advance of the joint hearing scheduled for January 12, 2010. As a result of Dreier's criminal conduct, our clients have suffered collective net losses of over $227 million, which represent approximately 58.5% of the total losses suffered by victims of Dreier's fraud, as set forth in the amended restitution order filed by the United States Attorney's Office (the "Government") on August 19, 2009 in Dreier's criminal prosecution.[1]

---

1   On or about March 11, 2009, each of our clients also received letters from Wendy Olsen, Victim Witness Coordinator for the Government, indicating that law enforcement had identified our clients as victims in Dreier's criminal case, and setting forth our clients' rights under the Crime Victims' Rights Act, including "the right to be reasonably heard at any public proceeding in the district court involving release, plea or sentencing," and "the right

As will be set forth in greater detail below, two principal concerns animate this submission. First, we are concerned that, in certain respects, the Government has not pursued all available avenues to ensure that our clients receive available restitution. Second, our clients find themselves now left at risk of being sued by the trustee in the Dreier LLP bankruptcy (the "Dreier LLP Trustee"), who seems determined to pursue inequitable avoidance actions against victims of Dreier's fraud, including our clients, to the further detriment of those victims. We have communicated our concerns to the Government and the Dreier LLP Trustee (and her counsel) both orally and in writing, but have not received satisfactory responses.[2]

Accordingly, as set forth more fully below, we respectfully request that Judge Rakoff: (i) hold a hearing to adjudicate the petition filed by Heathfield Capital Limited ("Heathfield") in the criminal case, which asserts an interest in roughly $33.5 million of artwork listed as forfeitable in the Government's preliminary order of forfeiture, as that petition lacks factual and legal merit; and (ii) reject certain aspects of the Government's Application for Approval of Agreements with Bankruptcy Trustees, filed on December 23, 2009, which would diminish the pool of forfeitable assets available to the victims of Dreier's fraud and leave victims subject to the inequitable avoidance actions threatened by the Dreier LLP Trustee. In addition, we also respectfully wish to convey to the three judge panel our opposition to the Dreier LLP Trustee's proposed litigation strategy of pursuing avoidance actions against our clients and the failure of the Government and the Dreier LLP Trustee to achieve an agreement that would adequately protect the innocent victims of Dreier's crimes.

## Factual and Procedural Background

The following is a brief recitation of the facts and procedural background pertinent to our application. Following his arrest in Toronto, Canada, on December 2, 2008, upon his return to the United States, Dreier was arrested and charged in a criminal complaint. On December 8, 2008, the Securities and Exchange Commission ("SEC") filed a complaint against Dreier, and Judge Cedarbaum appointed a receiver for Dreier's assets soon thereafter (the "Receiver"), including his interest in his law firm, Dreier LLP. On December 16, 2008, the Receiver filed a voluntary bankruptcy petition on behalf of Dreier LLP for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and, on January 26, 2009, an involuntary bankruptcy petition for relief under chapter 7 of the Bankruptcy Code was filed against Marc Dreier personally (hereinafter, the "Dreier LLP Bankruptcy" and "Dreier Bankruptcy," respectively). Sheila Gowan of Diamond McCarthy LLP was appointed as the trustee in the Dreier LLP Bankruptcy and Salvatore LaMonica of LaMonica, Herbst & Maniscalco LLP was appointed as the trustee in the Dreier Bankruptcy (collectively, the "Trustees"). On March 17, 2009, the Government filed a superseding indictment against Dreier, which included substantial

---

to full and timely restitution as provided in law."

2     While we refer to our clients collectively in this letter, please note that the term "we" as used herein refers to one or more of our clients at any given time, but does not necessarily refer to each and every one of our clients in every instance. For example, while the above paragraph is meant to convey that several of the undersigned have communicated with the Government and the Dreier LLP Trustee at different times individually and collectively, it is not meant to imply that each undersigned victim was party to each communication.

forfeiture allegations. Before the bar date of March 31, 2009, each of our clients filed proofs of claim in the Dreier LLP Bankruptcy, which collectively constitute approximately 56% of the total claims in that case. The bar date in the Dreier Bankruptcy is January 15, 2010. Each of our clients has either already filed proofs of claim in that proceeding or intends to do so prior to the bar date.

On April 22, 2009, a joint hearing was held in the above-captioned matters (the "Joint Hearing"), at which Your Honors requested that the Government and Trustees work together in order to resolve any issues with respect to these interrelated cases. In a filing made in advance of that hearing, the Government stated that it was "working to safeguard what remains of the victims' property, so that it can eventually be restituted to them." 4/20/09 Gov't Mem. at 11 (S1 09 Cr. 85) (Docket No. 53). The Government also told the Courts that "[f]orfeiture is *especially important* in this case because the victims' losses substantially exceed those of the creditors, and for years the victims' monies were used to pay the bills of creditors." *Id.* (emphasis added). The Government took the correct position that property stolen from victims should be forfeitable, not property of the bankruptcy estates to be distributed to non-victim creditors. *Id.* at 6, n.3 ("If, for example, a Dreier LLP bank account is uncovered that contains proceeds of the alleged fraud, these funds should not be distributed to non-victim creditors in the bankruptcy, but rather to the victims of Dreier's fraud through forfeiture and restitution in the criminal case."). At the Joint Hearing, the Government stated that it would attempt to arrive at a global resolution of outstanding bankruptcy and forfeiture issues within a period of weeks. On May 4, 2009, Your Honors issued a joint order expressing concern with the pace of the Government's and the Trustees' efforts to arrive at a global settlement. On May 7, 2009, the Government and the Trustees responded that they needed more time to resolve the issues and would provide another update thereafter on their progress towards a global resolution. During this time, our clients repeatedly asked the Government about the status of its discussions with the Trustees but were told only in general terms that those discussions were ongoing and that no global settlement had been reached.

On July 13, 2009, Dreier was sentenced by Judge Rakoff to twenty years' imprisonment and ordered to forfeit: (i) $746,690,000; and (ii) the specific properties listed in Schedule A to the preliminary order of forfeiture filed by the Government. *See* 7/13/09 Preliminary Order of Forfeiture (Docket No. 80). Included among the property to be forfeited was Dreier's New York apartment, two homes in the Hamptons, and 159 pieces of artwork.

On September 11, 2009, Heathfield, as successor in interest to Elliott Associates, L.P., another hedge fund that purchased fraudulent notes from Dreier, filed a petition in the criminal case, asserting an interest in fifteen pieces of art (the "Artwork") listed as forfeitable property on the Government's preliminary order of forfeiture (the "Heathfield Petition"). *See* 9/10/09 Heathfield Petition (Docket No. 89), attached hereto as Exhibit 1. Based on invoices attached to the Heathfield Petition, it appears that the Artwork was purchased by Dreier with approximately $33,534,785 in fraud proceeds. *See id.*, Exh. B, Schedule 1. After reviewing the Heathfield Petition, we contacted the Government to determine whether it would be filing an objection to the Heathfield Petition, and to identify numerous grounds for disputing Heathfield's alleged

security interest in the Artwork. As will be described in greater detail below, the Government has made no indication that it intends to file an objection to the Heathfield Petition, despite clear legal and factual issues that exist concerning Heathfield's claim that it has a valid security interest in the Artwork.

In early October 2009 – almost six months after the Joint Hearing and without any prior notice – each of the undersigned law firms received letters directed to our clients from counsel to the Dreier LLP Trustee: (i) demanding the return of funds transferred to our clients by Dreier from the Dreier LLP Attorney Trust Account or an explanation as to why those funds should not be returned; and (ii) threatening the immediate filing (within 30 days) of avoidance actions under the Bankruptcy Code unless such funds were returned or an adequate explanation provided. Following the receipt of these letters, we immediately contacted the Government to express our clients' concern regarding the Dreier LLP Trustee's efforts to pursue avoidance actions against our clients, notwithstanding the substantial net losses they sustained. While expressing its agreement with our position that avoidance actions against our victim clients would be inequitable, the Government told us that the Dreier LLP Trustee had rejected out-of-hand any global settlement proposal that included an agreement to refrain from pursuing victims of Dreier's fraud that suffered net losses. We also contacted counsel for the Dreier LLP Trustee to express our serious concerns about the Trustee's litigation plan, including setting forth in detail the reasons why any such litigation lacks merit. Despite our efforts to engage in a constructive dialogue with the Dreier LLP Trustee, we have not received any response from the Dreier LLP Trustee or her counsel as to whether she has agreed to refrain from pursuing what we submit are inequitable actions against our clients that will only increase their losses from Dreier's fraud.

On December 4, 2009, Your Honors filed an order setting the joint hearing for January 12, 2010 to address the progress of the above-captioned matters. *See* 12/4/09 Joint Order at 2 (Docket No. 95). On December 23, 2009, the Government filed an Application for Consent Order of Forfeiture, along with a proposed Consent Order of Forfeiture, relating to the forfeiture of monies by GSO, another hedge fund that purchased notes as part of Dreier's fraud, but that had net gains because it was repaid its principal investment with substantial amounts of interest (the "Application for Consent Order"). *See* 12/23/09 Gov't Mem. on Application for Consent Order (Docket No. 96). As part of the Consent Order, GSO agreed to disgorge $30,895,027.78 to the Government, which represents the profits that GSO received in excess of the amount of principal that was returned to GSO. *Id.* at 9. The Government expressly stated that it was not seeking forfeiture of any additional amounts from GSO "in order to prevent the GSO Facilities from becoming a victim of Dreier's offenses." *Id.* The Government stated in its Application that it was recently advised that the Dreier LLP Trustee and GSO also have reached an agreement; however, the details of that agreement are not set forth in the Government's Application (*id.* at 8), and, to date, the Dreier LLP Trustee has neither made a filing concerning such agreement nor responded to our requests for additional information.

On the same date, December 23, 2009, the Government filed a Memorandum in Support of Application for Approval of Agreements with Bankruptcy Trustees (the "Trustee Agreement Application"), along with a proposed Coordination Agreement. *See* 12/23/09 Gov't Mem. in

Support of Trustee Agreement Application (Docket No. 98). Under the terms of that agreement, the Government agreed to transfer to the Dreier LLP Trustee 97 pieces of seized artwork (although it does not identify the estimated value anywhere in the submission). *Id.* at 7. In the filing, the Government stated that this artwork was not included in the Preliminary Order of Forfeiture because "at the time of sentencing, the Government had not been able to directly trace those artworks to crime proceeds." *Id.* at 3. The Government also agreed to transfer to the Dreier Bankruptcy Trustee a total of approximately $827,700, which represents 10% of the net proceeds from the sale of Dreier's Hamptons homes and his New York apartment. *Id.* at 9. In exchange, the Dreier LLP Trustee agreed not to contest forfeiture of the property listed on Schedule A of the Preliminary Order of Forfeiture, including the $30,895,027.78 subject to the GSO Consent Order. The Government also agreed not to seek to forfeit or assert a right with respect to the proceeds of any avoidance actions brought by the Dreier LLP Trustee against persons and entities set forth in Schedule 2 of the application, including all of our clients.

## The Victims' Application

*Adjudication of the Heathfield Petition.* Our clients request that Judge Rakoff hold a hearing with respect to the Heathfield Petition, filed on September 11, 2009, which asserts an interest in fifteen pieces of Artwork that were purchased by Dreier with approximately $33.5 million in fraud proceeds. Heathfield alleges that Dreier entered into a Security Agreement with certain predecessors in interest to Heathfield, Elliot International and Elliott Associates L.P. (collectively, the "Elliott Entities") on October 24, 2008, which was subsequently amended on November 6, 2008. *See* Pet. ¶ 18. The Petition asserts that the Artworks should be surrendered to Heathfield based on the security interest purportedly granted to the Elliott Entities under the Security Agreement. *See* Pet. ¶ 26. Given the value of the Artwork and the serious issues concerning the validity of Heathfield's security interest, we asked the Government to advise us of its position with respect to the Heathfield Petition. Much to our disappointment, the Government advised us that it did not intend to file an objection to the Heathfield Petition.[3]

In response, on October 9, 2009, Fortress submitted a letter to the Government, requesting that the Government object to Heathfield's Petition on the grounds that both the Elliott Entities' underlying obligation to guarantee the fraudulent notes sold by Dreier and the security interest upon which Heathfield relies in its Petition constitute fraudulent conveyances under New York state law and federal forfeiture law (attached hereto as Exhibit 2). In its letter, Fortress argued that the security interest constituted a fraudulent conveyance under New York's Debtor Creditor Law ("DCL") and was thus invalid for two reasons: (i) Dreier acted with the actual intent to hinder, delay or defraud his creditors, which makes the security interest a fraudulent conveyance under Section 276 of Article 10 of the DCL (*See* Exh. 2 at 2); and (ii) the security interest was a fraudulent conveyance under a constructive fraud theory based on § 275 of the DCL, as the Elliott Entities did not pay fair consideration for their security interest. *Id.* at

---

[3] On September 14, 2009, 360Networks filed a petition (the "360Networks Petition"), asserting an interest in five pieces of Dreier's artwork, which are also the subject of the Heathfield's Petition. *See* 9/14/09 360Networks Petition (Docket No. 91). 360Networks also challenges Heathfield's Petition. We understand that the Government plans to file a motion to dismiss the 360Networks Petition.

The Honorable Jed S. Rakoff            Page 6
The Honorable Miriam G. Cedarbaum     January 7, 2010
The Honorable Stuart M. Bernstein

3-4. Thus, Fortress requested that the Government oppose the Heathfield Petition so that the Artwork would appropriately be subject to forfeiture, liquidated, and fairly and ratably distributed through the restitution fund to all of the victims of Dreier's fraud that suffered net losses, including Heathfield and our clients. *Id.* at 5. Fortress's letter was joined by Concordia (attached hereto as Exhibit 3).

On October 13, 2009, Eton Park submitted its own letter to the Government urging it to object to the Heathfield petition and setting forth additional arguments as to why Heathfield's purported security interest was invalid (attached hereto as Exhibit 4). In its letter, Eton Park argued that the purported lien should be rejected because Heathfield's security interest had never been perfected, as the $1.65 million promised payment by the Elliott Entities was not (and has not been) made, and Heathfield is not a "purchaser" for value with standing under 21 U.S.C. § 853(n)(6)(B) to assert a claim to the property at issue. *Id.* at 2. On October 16, 2009, Meyer joined in both letters (attached hereto as Exhibit 5).

Following receipt of our letters, the Government asked for our consent to share the letters with Heathfield's counsel, which we granted. On November 2, 2009, Heathfield responded by letter to our submissions (attached hereto as Exhibit 6). On November 23, 2009, Fortress provided the Government with a reply in support of its position (attached hereto as Exhibit 7). On November 24, 2009, Concordia joined in Fortress's letter (attached hereto as Exhibit 8). On November 25, 2009, Eton Park provided the Government with a reply in support of its position (attached hereto as Exhibit 9). On December 8, 2009, Meyer joined in Fortress's and Eton Park's letters (attached hereto as Exhibit 10).

Since the submission of these letters, we have asked the Government whether it would file an objection to the Heathfield Petition so that the issues set forth in the attached letters could be adjudicated by Judge Rakoff. To date, while the Government has not provided its final position, the Government does not appear to be willing to object to the Heathfield Petition. It is our position that an issue so central to the apportionment of restitution to the majority of Dreier's victims and which appears to involve over one-third of Dreier's total forfeitable assets recovered by the Government should not be unilaterally decided by the Government without the benefit of a hearing on the merits and judicial review of the issues. Accordingly, we respectfully request that Judge Rakoff hold a hearing in the criminal forfeiture proceeding to determine the validity of Heathfield's security interest in the Artwork in light of the legal and factual arguments set forth in our letters submitted to the Government on this issue and allow us to be heard to advance such arguments at the hearing, since it does not appear that the Government will do so on our behalf.

***Objection To Certain Aspects Of The Government's Application For Approval Of Agreements With The Trustees.*** Our clients object to certain parts of the Trustee Agreement Application for two reasons. First, the portions of the agreements to which we object provide for the transfer of property to the Trustees that we believe should instead be forfeited as part of the criminal proceeding and made available in the restitution fund for distribution to Dreier's victims. Second, the agreements fail to preclude the Dreier LLP Trustee from bringing

The Honorable Jed S. Rakoff                                    Page 7
The Honorable Miriam G. Cedarbaum              January 7, 2010
The Honorable Stuart M. Bernstein

inequitable avoidance actions against victims of Dreier's fraud.

       We find it extremely troubling and surprising that the Government, which originally took the position that all forfeitable assets belonged in the forfeiture proceeding and not in the bankruptcy proceedings, has now without any explanation reversed itself, and is prepared to surrender property that rightfully belongs in the restitution fund. While the Government has recognized that the bankruptcy process can provide a useful mechanism to oversee the efficient process of winding down the operations of Dreier's law firms, the Government has also stated that forfeiture is "the most cost effective tool for victim recovery," especially given the substantial expenses generally incurred by bankruptcy trustees through hiring counsel to identify and liquidate assets, thus depleting the funds available to victims. 4/20/09 Gov't Mem. at 11, 15-16. Indeed, the Government has stated that "where property that would otherwise be part of a bankruptcy estate is subject to forfeiture, forfeiture is *by far* the more effective mechanism to ensure the maximum recovery for victims." *Id.* at 15 (emphasis added). The proceeds of these plainly forfeitable assets should not be distributed to a larger pool of Dreier's general unsecured creditors – who for years were paid with the money stolen from our clients – or, worse yet, used by the Dreier LLP Trustee to fund litigation against our clients.

       In particular, the Government has agreed to turn over to the Dreier LLP Trustee 97 works of art seized by the U.S. Marshals. This artwork appears to be valuable, but the Government has not disclosed its value or even whether it has been appraised, facts that are critical to an evaluation of the agreements the Government asks the Court to approve. As the value of the artwork has not been publicly disclosed, we respectfully submit that the Court is not in a position to evaluate exactly what the Government is giving up to the Dreier LLP Trustee on behalf of the estate at the expense of the victims of Dreier's fraud.[4] In addition, surrender of the artwork should not be approved until the Government discloses its efforts to trace the source of the funds used to purchase the artwork, which its application fails to do. This artwork, like the rest of Dreier's art, was likely purchased with fraud proceeds, and if it was, should be forfeited in the criminal proceeding.

       Between its failure to object to the Heathfield Petition and its proposed agreement with the Trustees, the Government is prepared to give up substantially all of the value associated with Dreier's large art collection, which represents the largest class of forfeitable assets that should have been made available for distribution to victims of Dreier's fraud. Thus, we object to the unfairness of this aspect of the proposed Coordination Agreement to Dreier's victims, who stand to recover much less in the bankruptcy than they do in the forfeiture, and request that the Court decline to approve this aspect of the Trustee Agreement Application. Moreover, by agreeing to turn over 97 pieces of unappraised but likely valuable artwork, the Government is providing an infusion of fresh capital to bolster the dwindling resources of the Dreier LLP estate, which likely will be used in part to pay administrative fees and serve as a litigation war chest for the Dreier LLP Trustee to fund her inequitable and unfair avoidance actions against our clients, whose

---

[4]    We request, at a minimum, that the Government be ordered to disclose the value of this artwork if it is known, or have it appraised if it is unknown, prior to the approval of a binding agreement that could materially affect the rights of the fraud victims.

claims comprise approximately 56% of those made against the Dreier LLP estate.

In addition, the Government has agreed to turn over to the Dreier Bankruptcy Trustee (for the benefit of the personal bankruptcy estate), 10% of the net proceeds of the sale of Dreier's New York apartment and his two homes in the Hamptons, totaling approximately $827,700. The Application also allows for the Dreier Trustee to collect his fees and expenses in connection with the marketing and sale of these properties from these monies. *See* 12/23/09 Gov't Mem. in Support of Trustee Agreement Application at 9. In effect, after the Dreier Trustee's fees are paid, there will likely be little if any proceeds left to distribute among the many creditors of Dreier's personal estate. Thus, the only true effect of this agreement will be to compensate the Trustee at the expense of Dreier's victims.

Finally, as part of its Application, the Government has stated that GSO has agreed to forfeit its profits from Dreier's fraud and that the Dreier LLP Trustee has agreed not to challenge that forfeiture, which is the subject of the proposed Consent Order of Forfeiture filed the same day. We, of course, do not object to these provisions of the proposed Coordination Agreement. However, we do not believe that the Dreier LLP Trustee should receive potentially valuable forfeitable artwork that belongs in the criminal proceeding in exchange for agreeing not to challenge the forfeiture of GSO's profit, which was identified by the Government from the outset as fraud proceeds.

***Opposition to the Trustee's Proposed Litigation Strategy.*** As a general matter, the Dreier LLP Trustee's threatened actions to recover transfers to our clients, who are innocent victims that suffered substantial net losses, are unfair and inequitable. This is evidenced by the fact that it goes against the weight of precedent in other Ponzi scheme cases where this issue has been addressed. *See, e.g., In re Churchill Mortgage Investment Corp.*, 256 B.R. 664, 682 (Bankr. S.D.N.Y. 2000) (stating the "universally-accepted rule that investors may retain distributions from an entity engaged in a Ponzi scheme to the extent of their investments, while distributions exceeding their investments constitute fraudulent conveyances which may be recovered by the Trustee"); *In re Independent Clearing House Co.*, 77 B.R. 843 (D. Utah 1987) (same); *In re American Continental Corp.*, 142 B.R. 894, 900 (D. Ariz. 1992) (holding that the equities of the case require that preference litigation against investors who lost money not go forward and noting that "it is far more inequitable to penalize those who were paid, for an alleged fraud that was not of their doing, and by which they may have already been substantially damaged"); *Fisher v. Sellis (In re Lake States Commodities, Inc.)*, 253 B.R. 866, 872 (Bankr. N.D. Ill. 2000) ("Bankruptcy courts have generally allowed Ponzi scheme investors to retain payments up to the amount invested because investors have claims for restitution or rescission against the debtor that operated the scheme.") (citations omitted). While in some cases a trustee's pursuit of avoidance actions can be appropriate, that is certainly not the case here, where our clients' losses far exceed those of Dreier's other creditors and where the Dreier LLP Trustee is seeking to reclaim funds from the very victims whose money was stolen as part of this scheme.

Even the trustee in the Madoff case, the most high profile Ponzi scheme with the greatest losses in history, has taken a far more measured and reasonable approach in his pursuit of

avoidance actions against Madoff's victims. *See* Irving Picard, *Guidance on the Trustee's Pursuit of Avoidance Recoveries*, available at www.madoff-help.com (setting forth "some factors that the trustee would consider when determining whether to commence an avoidance action," including whether the victim was a "net loser"). In explaining the significance of the victim's loss position in making the litigation decision, the Madoff trustee emphasized: "In other words, did the customer get back less from [Madoff Investment Securities LLC] over the years than it put in. *If so, the Trustee is unlikely to commence an action.*" (emphasis added).

In addition, a federal district court's recent rejection of a receiver's efforts to initiate clawback lawsuits in the Stanford Financial Group ("Stanford") matter and its affirmation of the Securities and Exchange Commission's ("SEC") position in that case is instructive. In Stanford, the SEC intervened to oppose the receiver's pursuit of clawback actions against those who had suffered net losses. Agreeing with the SEC, the district court barred the receiver from pursuing such actions and held "as a matter of law that innocent investors in this case who redeemed their investments before the Receivership are not liable for return of principal." *See Janvey v. Alguire et al*, Docket No. 09-CV-0724-N, Order Granting in Part and Denying in Part Receiver's Motion for Order Freezing Assets (N.D. Tex. Aug. 4, 2009), *aff'd in part on other grounds*, 2009 U.S. App. LEXIS 25031 (5th Cir. Nov. 13, 2009).[5] On appeal, the SEC filed an amicus brief on behalf of the victims, in which it emphasized that the receiver's misguided efforts to seek principal and interest payments from innocent investors who suffered a net loss in the name of equalizing recovery for all victims "would be sanctioning further torment of a defrauded investor." *Janvey v. Alguire et al.*, Docket No. 09-10761 (5th Cir. 2009), SEC Amicus Br. at 16-17 (citation omitted).[6]

Finally, the Dreier LLP Trustee has no basis to dispute the fact that each of our clients "took for value" in their transactions with Dreier and acted at all times with the utmost good faith. Our clients should not be forced to defend against fundamentally unfair avoidance actions by the Dreier LLP Trustee, which would have little to no likelihood of success, and would have the principal effect of diminishing the property available to victims of Dreier's fraud and adding to the already substantial costs incurred by those victims.[7]

While the undersigned victims, individually and as a group, have articulated the positions outlined above to both the Government and the Dreier LLP Trustee, both orally and in writing,

---

5  The term "principal payments" in the Stanford case is used to refer to "funds received by innocent investors up to the amount of funds invested. Likewise, the term 'interest payments' in the context of this case refers to funds received by innocent investors beyond the amount of funds invested." *See Janvey v. Alguire*, No. 09-10761 (5th Cir. 2009), SEC Amicus Br. at 2, n.1. Thus, for purposes of comparison to this case, the interest and other payments received by victims who suffered net losses here would be akin to the principal payments in Stanford, as the payments that were received were far less than the funds invested.

6  In that litigation, the SEC also advised the Court that the SEC itself "does not make a practice of suing innocent victims of Ponzi schemes for the return of *principal*, and applies a great deal of discretion and consideration before asserting claims against victims for the return of *interest* payments received." *SEC v. Stanford Int'l Bank Ltd. et al.*, Docket No. 09-cv-298, Plaintiff's Emergency Motion to Modify Receivership Order, at 3 (N.D. Tex., July 20, 2009) (emphasis in original).

7  Our clients have additional defenses to these lawsuits, which are not set forth in detail herein.

what little communication we have received from the Dreier LLP Trustee indicates that she still plans to pursue these actions. As a matter of fundamental fairness and equity, we ask that Your Honors reject efforts by the Dreier LLP Trustee that would re-victimize our clients.

\* \* \*

In light of the foregoing, the undersigned victims respectfully request that Judge Rakoff: (i) hold a hearing on the merits of the Heathfield Petition, and (ii) reject those terms of the Trustee Agreement Application, which purport to transfer assets to the Dreier LLP and Dreier bankrutpcy estates that should be subject to forfeiture and made available ratably to the fraud victims through the restitution fund. In addition, we respectfully request that Your Honors reject any attempt by the Dreier LLP Trustee to further victimize our clients through the pursuit of inequitable avoidance actions, and that the Dreier LLP Trustee be directed to defer commencement of avoidance actions against our clients pending any negotiations of a revised agreement. In sum, we ask that Your Honors help to ensure that the interests of our clients – and other Dreier victims that remain out-of-pocket substantial amounts – are considered, so that they do not suffer any additional harm as a result of Dreier's crimes.

Respectfully submitted,

_____
Howard W. Goldstein
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
*Counsel to Fortress Investment Group LLC*

_____
Robert M. Abrahams
Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022
*Counsel to Meyer Venture Partners, LP*

_____
Janice Mac Avoy
Audrey Strauss
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
*Counsel to Concordia Advisors LLC*

_____
Karen Patton Seymour
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
*Counsel to Eton Park Capital Management LP*

The Honorable Jed S. Rakoff  
The Honorable Miriam G. Cedarbaum  
The Honorable Stuart M. Bernstein  

Page 11  
January 7, 2010

_____  
Jonathan D. Polkes  
Weil, Gotshal & Manges LLP  
767 Fifth Avenue  
New York, New York 10153  
*Counsel to Perella Weinberg Partners Capital Management LP*

Attachments

cc:   ***By Email*** (w/o attachments)

     Sharon Cohen Levin, AUSA, Chief, Forfeiture Unit  
     Jonathan R. Streeter, AUSA  
     Anna E. Arreola, AUSA  
     Jeff Alberts, AUSA  
     Matthew A. Schwartz, AUSA  

     Richard I. Janvey, Esq.  
     Howard D. Ressler, Esq.  
     Stephen T. Loden, Esq.  
     Diamond McCarthy LLP  
       *Counsel to Sheila M. Gowan, Dreier LLP Trustee*

     Gary F. Herbst, Esq.  
     Holly R. Holecek, Esq.  
     LaMonica, Herbst & Maniscalco, LLP  
       *Counsel to Salvatore LaMonica, Dreier Trustee*

     Kevin S. Reed, Esq.  
     Quinn Emanuel  
       *Counsel to Heathfield Capital Limited*

7532481