UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
UNITED STATES OF AMERICA  : NO. 09-CR-085 (JSR)
 :
v. :
 :
MARC S. DREIER, :
 :
              Defendant. :
 :
 :
------------------------------------------------------x

# MEMORANDUM IN OPPOSITION TO PAUL GARDI'S MOTION TO MODIFY THE SECOND AMENDED RESTITUTION ORDER

SULLIVAN & CROMWELL
Karen Patton Seymour
(seymourk@sullcrom.com)
Maureen A. Fitzgerald
(fitzgeraldm@sullcrom.com)
125 Broad Street
New York, New York 10004
(tel) (212) 558-4000
(fax) (212) 558-3588

*Attorney for Eton Park Capital Management, L.P.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .................................................................................................................. 2

I.    Dreier's Sentencing and Restitution Orders ............................................................ 2

II.   Mr. Gardi's Motion to Amend the Second Restitution Order ................................ 3

ARGUMENT ....................................................................................................................... 4

I.    THE COURT SHOULD TREAT MR. GARDI'S MOTION AS A MOTION FOR RECONSIDERATION AND ACCORDINGLY SHOULD DENY THE MOTION BECAUSE IT IS UNTIMELY AND DOES NOT SATISFY THE STANDARDS FOR RECONSIDERATION UNDER FED. R. CIV. P. 59(e) ................ 4

    A.    The Court Should Treat Mr. Gardi's Motion as a Motion for Reconsideration under Fed. R. Civ. P. 59(e) ................................................ 4

    B.    The Court Should Deny Mr. Gardi's Motion Because It Is Untimely Under Fed. R. Civ. P. 59(e) ................................................................................... 5

    C.    Even if the Court Were to Consider Mr. Gardi's Motion as Timely, the Court Should Deny Mr. Gardi's Motion Because He Fails to Satisfy the Standards for Reconsideration Under Fed. R. Civ. P. 59(e). ........................ 6

II.   ALTERNATIVELY, THE COURT SHOULD DENY MR. GARDI'S MOTION BECAUSE UNDER THE CIRCUMSTANCES OF THIS CASE PRO RATA DISTRIBUTION IS FAIR AND EQUITABLE ............................................................ 8

CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*CFTC v. Efrosman*,
   No. 05-Civ-08422, 2009 U.S. Dist. LEXIS 84529 (S.D.N.Y. Sept. 16, 2009) ...................9, 10

*Davidson v. Scully*,
   172 F. Supp. 2d 458 (S.D.N.Y. 2001) ..............................................................................8

*Gaither v. Hous. Auth.*,
   No. 07-CV-667, 2008 U.S. Dist. LEXIS 26321 (D. Conn. Mar. 31, 2008) ...........................6

*In re The Reserve Fund Securities and Derivative Litig.*,
   No. 09-Civ-4346, 2009 WL 4249128 (S.D.N.Y. Nov. 25, 2009) .........................................10

*Kapsis v. Brandveen*,
   No. 09-CV-1352, 2009 U.S. Dist. LEXIS 82766 (E.D.N.Y. Sept. 9, 2009) ......................5, 7

*Petrello v. White*,
   No. 01-CV-3082, 2007 U.S. Dist. LEXIS 57489 (E.D.N.Y. Aug. 7, 2007) ...........................6

*SEC v. Byers*,
   637 F. Supp. 2d 166 (S.D.N.Y. 2009) ..............................................................................10

*SEC v. Credit BancCorp, Ltd.*,
   290 F.3d 80 (2d Cir. 2002) .................................................................................................9

*Shrader v. CSX Trans., Inc.*,
   70 F.3d 255 (2d Cir. 1995) .................................................................................................7

*United States v. Benitez*,
   779 F.2d 135 (2d Cir. 1985) ...............................................................................................9

*United States v. Gigante*,
   971 F. Supp. 755 (E.D.N.Y. 1997) .....................................................................................5

*United States v. Gross*,
   No. 98 CR. 159, 2002 U.S. Dist. LEXIS 28159 (E.D.N.Y. Dec. 12, 2002) ...................4, 7, 8

*Wechsler v. Hunt Health Sys., Ltd.*,
   No. 94 Civ. 8294, 2004 U.S. Dist. LEXIS 19757 (S.D.N.Y. Sept. 30, 2004) .......................7

**STATUTES**

18 U.S.C. § 3664(i) ............................................................................................................. 1

**OTHER AUTHORITIES**

E.D. & S.D. R. 6.3 ("Local Civil Rule 6.3") ............................................................. 5, 7, 8

Fed. R. Civ. P. 6(b)(2) ......................................................................................................... 5

Fed. R. Civ. P. 59(e) ................................................................................................... passim

Fed. R. Crim P. 32(c) .......................................................................................................... 2

Fed. R. Crim. P. 57(b) ......................................................................................................... 4

Eton Park Capital Management, L.P. respectfully submits this Memorandum of Law in opposition to Paul Gardi's motion to modify the Second Amended Restitution Order. For the reasons set forth below, the Court should deny Mr. Gardi's motion.

## PRELIMINARY STATEMENT

Paul Gardi moves to modify the second amended restitution order, imposed by the Court over three months ago, and seeks priority in the distribution of the restitution funds pursuant to 18 U.S.C. § 3664(i). (Gardi Mem. In Supp. of Paul Gardi's Mot. to Modify the Second Am. Rest. Order 1 ("Gardi Mot.").) Mr. Gardi argues that the Court should disregard the well-accepted principle that pro rata distribution is the most equitable means of compensating victims of a Ponzi scheme and afford him priority because the nature and amount of his loss differentiates him from the numerous victims of Marc Dreier's fraud. (*Id.* at 15-18.)

The Court should deny Mr. Gardi's motion in its entirety. *First*, the Court should construe Mr. Gardi's motion as a motion for reconsideration of the Court's Second Amended Restitution Order and deny the motion as untimely. *Second*, even assuming Mr. Gardi's motion was timely filed, Mr. Gardi has failed to satisfy the heavy burden of showing that the Court overlooked any factual matters or controlling decisions that would have materially influenced its decision regarding the appropriate distribution of restitution among Dreier's victims. *Finally*, even if the Court were to consider Mr. Gardi's motion on the merits, under the circumstances of this case, pro rata distribution remains the most equitable means of compensating Dreier's victims.

## BACKGROUND

### I.  Dreier's Sentencing and Restitution Orders

On May 11, 2009, Marc Dreier pled guilty to all counts in the superseding indictment and admitted to stealing millions of dollars from various hedge funds and Dreier LLP clients. The Court set Dreier's sentencing for July 13, 2009.

In the interim, the United States Probation Office began a presentence investigation pursuant to Fed. R. Crim. P. 32(c). The Probation Office was required to prepare and submit to the Court a presentence report that would include "information that assesses any financial . . . impact on any victim" and that would "contain[] sufficient information for the court to order restitution." Fed. R. Crim. P. 32(c)(1)(B). In addition, the Department of Justice invited Dreier's victims to submit victim impact statements to the United States Attorney in order to provide the Court with a more complete picture of the impact of Dreier's crimes on his victims.

After consideration of all relevant information, including the presentence report and numerous victim impact statements, as well as arguments made during the sentencing hearing, the Court sentenced Marc Dreier to 20 years in prison, and ordered him to pay restitution to the victims of his crimes in the amount of $387,675,303. (*See* Fitzgerald Decl. Ex. A at 47 (Dreier Sent. Tr., July 13, 2009).) At sentencing, Dreier's victims were given the opportunity to address the Court. (*Id.* at 2.)

On July 17, 2009, judgment was entered against Dreier, requiring him to make restitution in the amount of $387,675,303 to the payees listed in the schedule attached to the

judgment. (Fitzgerald Decl. Ex. B (Crim. J.).) Mr. Gardi was among the payees set forth in the schedule.

On August 19, 2009, the Court entered an Amended Restitution Order adding additional victims and providing that restitution shall first be paid to the victims listed in the attached schedule, which included Mr. Gardi. (Fitzgerald Decl. Ex. C (Am. Rest. Order, Aug. 19, 2009).) The order also stated, "[i]f restitution is made in partial payments, the victims shall receive payments on a *pro rata basis* according to the amounts listed in the attached schedule." (*Id.* (emphasis added).) The schedule specified the loss amounts attributable to each victim, including Mr. Gardi. Neither Mr. Gardi nor any other victim filed objections to the Court's Amended Restitution Order.

On September 29, 2009, the Court entered a Second Amended Restitution Order solely to add an additional victim. The order again provided that "[i]f restitution is made in partial payments, the victims shall receive payments on a *pro rata basis* according" to their respective losses. (Fitzgerald Decl. Ex. D (Second Am. Rest. Order, Sept. 29, 2009) (emphasis added).)

## II. Mr. Gardi's Motion to Amend the Second Restitution Order

More than three months (approximately 105 days) after the Court entered its Second Amended Restitution Order, Paul Gardi now asks the Court to reconsider its determination that a pro rata distribution is the appropriate means of compensating Dreier's victims, and modify the order to give Mr. Gardi priority in payment over the various hedge fund victims. (Gardi Mot. at 1-5.) Mr. Gardi contends that as an individual he is distinct from the hedge funds, which are "sophisticated institutional investors" who "voluntarily surrendered title

and control of their funds to Dreier." (*Id.* at 2.) Furthermore, Mr. Gardi argues that unlike the hedge fund victims, Dreier stole settlement funds from him, which warrants granting Mr. Gardi priority over these victims. (*Id.* at 1-2.)

Mr. Gardi is also pursuing an alternative source of recovery of his losses. On January 15, 2010, he and Alex Interactive Media, LLC, an entity with which Mr. Gardi is apparently affiliated, filed a motion in the Dreier LLP bankruptcy case for relief from the automatic stay to permit them to pursue a claim against the alleged transferee of the funds Dreier stole from them. (Fitzgerald Decl. Ex. G (Gardi Mot. For An Order Granting Relief From Automatic Stay).) According to that motion, Alex Interactive Media was also a party to Mr. Gardi's relationships with JANA and with Dreier.

## ARGUMENT

I. **THE COURT SHOULD TREAT MR. GARDI'S MOTION AS A MOTION FOR RECONSIDERATION AND ACCORDINGLY SHOULD DENY THE MOTION BECAUSE IT IS UNTIMELY AND DOES NOT SATISFY THE STANDARDS FOR RECONSIDERATION UNDER FED. R. CIV. P. 59(e).**

A. The Court Should Treat Mr. Gardi's Motion as a
   Motion for Reconsideration under Fed. R. Civ. P. 59(e)

The Federal Rules of Criminal Procedure do not directly address the issue before the Court: when, and under what circumstances, may a victim move to modify a restitution order to provide for a different distribution of restitution funds among victims? In these circumstances, the Court can look to the Federal Rules of Civil Procedure for guidance. *See* Fed. R. Crim. P. 57(b) ("Procedure When There Is No Controlling Law. A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."); *see also United States v. Gross*, No. 98 CR. 159, 2002 U.S. Dist. LEXIS 28159, at *3-7 (E.D.N.Y. Dec. 12, 2002) (applying the strict standards of Fed. R. Civ. P. 59(e) to the

government's motion for reconsideration); *United States v. Gigante*, 971 F. Supp. 755, 758 (E.D.N.Y. 1997) ("Since the Rules of Criminal Procedure do not speak specifically to this matter, a court conducting a criminal case is permitted to draw from and mirror a practice that is sanctioned by the Federal Civil Rules of Procedure."). Because Mr. Gardi is asking the Court to reconsider its previous ruling that distribution of restitution funds be made on a pro rata basis, the Court should treat Mr. Gardi's motion as if it were a motion for reconsideration governed by Rule 59(e) of the Federal Rules of Civil Procedure and Local Civil Rule 6.3.

B. The Court Should Deny Mr. Gardi's Motion Because It Is Untimely Under Fed. R. Civ. P. 59(e)

A motion for reconsideration may be brought under Fed. R. Civ. P. 59(e) and Local Civil Rule 6.3. *Kapsis v. Brandveen*, No. 09-Cv-1352, 2009 U.S. Dist. LEXIS 82766, at *2 (E.D.N.Y. Sept. 9, 2009) (citing *Wilson v. Pessah*, No. 05-CV-3143, 2007 U.S. Dist. LEXIS 17820, at *4 (E.D.N.Y. March 14, 2007)). Fed. R. Civ. P. 59(e) provides that "[a] motion to alter or amend judgment must be filed no later than 28 days after the entry of the judgment."[1] A motion for reconsideration must be denied as untimely if filed after the 28-day time period prescribed in Rule 59(e). [U]nder Fed. R. Civ. P. 6(b)(2), the court is not permitted to extend the time to file a motion brought pursuant to Rule 59(e).

Assuming the Court treats Mr. Gardi's motion to modify the Second Amended Restitution Order as a motion for reconsideration, the time period prescribed in Rule 59(e) would preclude this untimely motion since it is more than three months after the Court's entry of the

---

[1] Effective December 1, 2009, Fed. R. Civ. P. 59(e) was amended and the time for filing a motion for reconsideration was changed from 10 days to 28 days. However, regardless of whether the 10 or 28-day time period applies, Mr. Gardi's motion is untimely under both limitations.

Second Amended Restitution Order. Mr. Gardi's motion papers offer no explanation as to his delay in filing the present motion, nor does he claim that he failed to receive notice of the Court's restitution orders. Indeed, when confronted with the untimeliness of his motion at the Joint Hearing on January 12, 2010, Mr. Gardi's counsel stated that "until last Friday, we understood that the Chapter 11 trustee was contesting the forfeiture of funds; and it was unclear which funds would be in and would be out of the forfeiture order." (Fitzgerald Decl. Ex. E at 17 (Joint Hr'g Tr., Jan. 12, 2010).) Which funds would be subject to restitution, however, has no bearing on how such funds would be distributed among the victims. Both the First and Second Amended Restitution Orders made clear that the Court required that restitution funds be distributed on a pro rata basis. As a payee listed on both of these orders, Mr. Gardi was thus well aware of the Court's restitution plan and could have filed this motion in a timely fashion months ago.

Accordingly, having offered no justification for the substantial delay in filing his motion, the Court should deny the motion as untimely under Rule 59(e). *See Gaither v. Hous. Auth.*, No. 3:07-CV-667, 2008 U.S. Dist. LEXIS 26321, at *4 (D. Conn. Mar. 31, 2008) (denying motion for reconsideration under Rule 59(e) as untimely where the motion was filed well beyond time limitation set forth in Rule59(e)); *Petrello v. White*, No. 01-CV-3082, 2007 U.S. Dist. LEXIS 57489, at *18-22 (E.D.N.Y. Aug. 7, 2007) (same).

    C.    Even if the Court Were to Consider Mr. Gardi's Motion as Timely, the Court Should Deny Mr. Gardi's Motion Because He Fails to Satisfy the Standards <u>for Reconsideration Under Fed. R. Civ. P. 59(e)</u>

The standard for granting a motion for reconsideration is strict. Such motions will "generally be denied unless the moving party can point to controlling decisions or data that the

court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader* v. *CSX Trans., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Gross*, 2002 U.S. Dist. LEXIS 28159, at *7 (noting that regardless of the statute under which a motion for reconsideration is brought, "in all circumstances, motions for reconsideration are assessed under a very strict standard"). Furthermore, "[r]econsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the Court," *Kapsis*, 2009 U.S. Dist. LEXIS 82766, at *2, nor is it proper to "advance 'new facts, issues or arguments not previously presented to the court,'" [2] *Wechsler* v. *Hunt Health Sys., Ltd.*, No. 94 Civ. 8294, 2004 U.S. Dist. LEXIS 19757, at *6 (S.D.N.Y. Sept. 30, 2004) (quoting *Davidson* v. *Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001)).

In imposing Dreier's sentence, the Court considered the submissions presented by Dreier, the Government, the Probation Office and the victims, including Mr. Gardi. In taking into consideration all of the facts before it, including the impact of Dreier's crime on his numerous victims, the Court determined that restitution should be distributed on a pro rata basis. (*See* Fitzgerald Decl. Ex. A at 44.)

In his motion, Mr. Gardi points to no facts or controlling law which the Court overlooked or failed to consider in determining that restitution should be made on a pro rata basis. Indeed, it would appear that the facts and circumstances regarding Mr. Gardi's loss set

---

[2] In addition, pursuant to Local Civil Rule 6.3, a party seeking reconsideration of a court's order shall "set[] forth [in its memorandum] concisely the matters or controlling decisions which counsel believes the court has overlooked." E.D. & S.D. R. 6.3. The standards governing "motions to alter or amend a judgment pursuant to Rule 59(e), and motions for reconsideration pursuant to Local Civil Rule 6.3 are the same." *Wechsler*, 2004 U.S. Dist. LEXIS 19757, at *5 (citations omitted).

forth in his motion were before the Court at or before the time the Court entered its Second Amended Restitution Order, and thus Mr. Gardi's motion should be denied because he is simply attempting to relitigate issues previously before the Court. *See Gross*, 2002 U.S. Dist. LEXIS 28159, at *12-13 (denying the government's motion for reconsideration of the court's order dismissing an indictment because the government was simply putting forth the same facts and arguments already before the court when it issued its original order). To the extent that Mr. Gardi failed to provide the Court with additional facts and arguments set forth in his present motion, Mr. Gardi's motion should be denied because Rule 59(e) is not a vehicle in which to advance new facts, issues or arguments not previously presented to the Court. *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001) (explaining that a motion to reconsider should be denied when the movant is using the court's order as "the opening of a dialogue" in which to advance new theories not previously presented to the court). Therefore, Mr. Gardi fails to satisfy the standards under Rule 59(e) and Local Civil Rule 6.3.

## II. ALTERNATIVELY, THE COURT SHOULD DENY MR. GARDI'S MOTION BECAUSE UNDER THE CIRCUMSTANCES OF THIS CASE PRO RATA DISTRIBUTION IS FAIR AND EQUITABLE.

The Court was correct when it ordered that in the event restitution is made in partial payments, restitution is to be distributed among Dreier's victims on a pro rata basis. It is well-recognized that ordering restitution on a pro rata basis is not only consistent with principles of fairness and equity but well within the district court's equitable authority. *See SEC v. Credit BancCorp, Ltd*, 290 F.3d 80, 88-89 (2d Cir. 2002) (explaining that it is within the district court's equitable authority to treat all fraud victims alike by ordering pro rata distribution of assets); *United States v. Benitez*, 779 F.2d 135, 139 (2d Cir. 1985) (noting the court's inherent power to fashion relief for victims of crime). Indeed, "[i]n the Second Circuit, the pro rata distribution of

funds to fraud victims is generally presumed to be the most equitable relief. This is especially true when victims are similarly situated in their relationships with the defrauders, and the funds of the victims *have been commingled.*" *CFTC* v. *Efrosman*, No. 05-Civ-08422, 2009 U.S. Dist. LEXIS 84529, at *26 (S.D.N.Y. Sept. 16, 2009) (emphasis added).

Mr. Gardi argues that the Court should depart from this Circuit's well-accepted presumption of pro rata distribution of funds to Ponzi scheme victims because Mr. Gardi's relationship to Mr. Dreier is not similar to the position of the hedge fund victims. Mr. Gardi argues that unlike the hedge funds, Marc Dreier owed Mr. Gardi a fiduciary duty as his lawyer and breached that duty by stealing settlement funds owed to Mr. Gardi. In addition, he argues that unlike the sophisticated hedge funds, Mr. Gardi is only an individual who lacks the ability to sustain the substantial losses that the hedge funds are able to absorb. (Gardi Mot. at 13.) Furthermore, Mr. Gardi argues that equitable principles support granting him priority in distribution because he claims to be able to trace approximately two thirds of Mr. Gardi's $6.3 million in stolen settlement funds to one hedge fund. (Gardi Mot. at 14.) These points do not withstand scrutiny.

First, Mr. Gardi is correct when he describes Dreier as inexcusably abusing his position as a fiduciary in order to steal money from his clients. The problem for Mr. Gardi is that the Court made these very same findings at Dreier's sentencing[3] and took this into

---

[3] At Dreier's sentencing, the Court stated:

> But as I think also is apparent from the discussion here today, the real heart of these crimes, the most appalling fact is the betrayal of trust. Mr. Dreier betrayed the trust of investors, betrayed the trust of colleagues, betrayed the trust of clients, betrayed the trust of friends, and to some extent even betrayed the trust of his family. This goes beyond the fact that he did this cloaked, at least in part,

consideration when it determined that restitution be paid to Dreier's victims on a pro rata basis. In addition, the fact that Dreier used one victim's money and transferred it to another entity (that was not a victim) does not weigh in favor of any particular victim because the fraud proceeds, including the proceeds of Mr. Gardi's settlement, were commingled with the other funds in the "5966 account." *See In re The Reserve Fund Sec. and Derivative Litig.*, No. 09-Civ-4346, 2009 WL 4249128, at *10 (S.D.N.Y. Nov. 25, 2009) (reiterating the well-settled principle that "pro rata distribution of assets is 'favored' where the funds of the investors are 'commingled' and the investors are 'similarly situated'"); *see also SEC v. Byers*, 637 F. Supp. 2d 166, 177 (S.D.N.Y. 2009) (noting that a tracing analysis in fraud cases has been "almost universally rejected by courts as inequitable"). Indeed, the commingling of funds "weigh[s] heavily in favor of pro rata distribution" of restitution funds. *See Efrosman*, 2009 U.S. Dist. LEXIS 84529, at *27 (holding that the commingling of the victims' funds weighed heavily in favor of pro rata distribution of the funds).

The nature of Dreier's fraud and the source of any loss by Mr. Gardi and the hedge funds are not dissimilar. Eton Park entrusted funds to Dreier, who provided Eton Park with forged documents and led Eton Park to believe that its funds would be invested in legitimate securities. Mr. Gardi states that his attorney, Dreier, forged Gardi's signature and notarization on a fraudulent settlement agreement calling for payment of over $6 million, but that Dreier misdirected those funds. The nature of the bad acts is really quite similar.

---

> with the aura of a lawyer. But I cannot overlook the fact that trust is at the heart of what our system of justice demands from lawyers: Professionalism, integrity, trustworthiness. And Mr. Dreier has betrayed them all.

(Fitzgerald Decl. Ex. A. at 44.)

Nor do Gardi's motion papers establish the hardship case that he portrays. First, he deprecates the losses of Eton Park and the other "institutional investors" because they are "sophisticated" and their losses "constitute only a *de minimus* [sic] fraction of the sophisticated institutional investors' assets." (Gardi Mot. at 16 n.11.) However, the loss of $71 million is substantial, and the losses will be felt not by an "institution" but by the various investors in funds offered by the company, many of them individuals just like Mr. Gardi. Nor is Mr. Gardi entitled to preferential treatment because he is not "sophisticated." (*See* Gardi Mot. at 10 (noting that Gardi is "an individual rather than a sophisticated institutional investor").) Although his motion papers supply only the scantest information about his financial situation, Mr. Gardi's suggestion that he is unsophisticated is belied by the "overwhelming[ly] success[ful]" investment Gardi alleges he "spearheaded and brought to JANA Partners, LLC," and which made an "exceptional return" for JANA's investors and for JANA.[4] (Gardi Mot. at 6.)

Further, Mr. Gardi's motion fails to explain why he, rather than JANA, is the victim of Dreier's fraud. According to Mr. Gardi's declaration, Dreier or his agent induced JANA to wire money to him by forging Mr. Gardi's signature on settlement documents Mr. Gardi had not authorized. (Gardi Decl. at ¶¶ 16–21.) Mr. Gardi's motion fails to explain whether he retains his rights against JANA, or whether he has voluntarily relinquished those rights. Such circumstances would only undermine his argument for preferential treatment. Mr. Gardi has also filed a motion in Dreier LLP proceeding to pursue what he views as an alternative

---

[4] In fact, Mr. Gardi was Executive Vice President of Ask Jeeves, Inc. The other positions Mr. Gardi held include Managing Director for Hawk Holdings, a venture capital investment and operating company and Executive Vice President of Operations and strategy for e-Exchange, a business-to-business trading company. Moreover, he has achieved an MBA degree from Harvard University. (*See* Fitzgerald Decl. Ex. F at 2 (Excerpts from Ask Jeeves, Inc., Proxy Statement (Schedule 14A) (Apr. 18, 2005).)

source of recovery against the alleged transferee of the money Dreier stole from him. (Fitzgerald Decl. Ex. G.) Any potential sources of recovery available to Mr. Gardi plainly bear upon the equities he seeks to invoke in this Court.

In sum, we do not dispute that Mr. Gardi was victimized and may have suffered a substantial loss, but his effort to claim special treatment is, at best, unsubstantiated. Thus, while Dreier's victims are made up of different institutions, entities and individuals, their relationship to Dreier is the same: Dreier stole his victims' money, commingled it, and used it to further his Ponzi scheme, furnish his lavish lifestyle and operate his law firm. Mr. Gardi's arguments that the equities favor him are entirely unsupported by the law and inconsistent with the facts before this Court.

## CONCLUSION

For the reasons set forth above, the Court should deny Mr. Gardi's motion to modify the Second Amended Restitution Order.

Dated: New York, New York
January 20, 2010

By: _____
SULLIVAN & CROMWELL
Karen Patton Seymour
(seymourk@sullcrom.com)
Maureen A. Fitzgerald
(fitzgeraldm@sullcrom.com)
125 Broad Street
New York, New York 10004
(tel) (212) 558-4000
(fax) (212) 291-9024