UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- against -

MARC DREIER,

                  Defendant.

S1 09 CR 085 (JSR)

**FORTRESS INVESTMENT GROUP LLC'S OPPOSITION TO PAUL GARDI'S
MOTION TO MODIFY THE SECOND AMENDED RESTITUTION ORDER**

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND ..................................................................................................................4

ARGUMENT ........................................................................................................................8

I. MR. GARDI'S LATE-FILED MOTION SHOULD BE DENIED ..........................9

II. MR. GARDI SHOULD NOT BE GRANTED PRIORITY OVER ANY OTHER VICTIM OF DREIER'S FRAUD ..................................................................10

CONCLUSION ...................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*United States v. Catoggio*,
   326 F.3d 323 (2d Cir. 2003)..........................................................................................9

*United States v. Jones*,
   1987 U.S. Dist. LEXIS 3453 (S.D.N.Y. 1987).................................................13 n.7

*United States v. Perry*,
   360 F.3d 519 (6th Cir. 2004) ............................................................................13 n.7

**STATUTES**

18 U.S.C. § 3663(b) ..............................................................................................6 n.4

18 U.S.C. § 3664(i) ...............................................................................................1, 9, 14

18 U.S.C. § 3664(d)(5) ................................................................................................8

18 U.S.C § 3664(f)(1)(A).............................................................................................8

Fortress Investment Group LLC ("Fortress") and its affiliated entities, which suffered the losses associated with the fraud perpetrated by Marc Dreier ("Dreier"), namely FCOF UL Investments LLC and Fortress Credit Opportunities I LP (together, the "Fortress Victims"), respectfully submit this opposition to Paul Gardi's motion for the entry of an order modifying the Second Amended Restitution Order, dated September 29, 2009, to provide Mr. Gardi with priority in the distribution of funds pursuant to 18 U.S.C. § 3664(i).[1]

## PRELIMINARY STATEMENT

On September 29, 2009, this Court entered a Second Amended Restitution Order, which expressly provided for *pro rata* distribution of the restitution funds to each of the victims of Dreier's fraud identified by the Government on the schedule attached to the Order (the "Second Amended Schedule"). Over three months later, and nearly five months since the first Amended Restitution Order was entered, Mr. Gardi has filed a motion asking this Court to treat him differently from all of the other Dreier victims by granting him priority over them and awarding him a distribution of $6.3 million, 100% of his loss. This amounts to roughly 13.5% of the total funds that appear to be available for restitution in the criminal proceeding and would leave all other victims with substantially less recovery. Despite the fact that he seeks relief at a time when the Dreier victims rightfully for many months have had expectations of *pro rata* distribution, Mr. Gardi offers absolutely no explanation as to why the relief was not sought earlier. Not only would the relief sought by Mr. Gardi at this late date be wholly inequitable, but it would also impede the Government's efforts to restitute the funds presently available for distribution to all of the Dreier victims. If the Court allowed one victim priority, the Court would then be obliged

---

[1] On January 13, 2010, Mr. Gardi filed his motion and memorandum of law with accompanying declarations of Mr. Gardi and his counsel, Craig Carpenito of Alston & Bird LLP (Docket Nos. 102-105) (hereinafter, "1/13/10 Gardi Mem." and "1/13/10 Gardi Decl."). The following day, on January 14, 2010, Mr. Gardi filed his corrected declaration and a corrected memorandum of law (Docket Nos. 113 & 114) (hereinafter, "1/14/10 Gardi Mem." and 1/14/10 Gardi Decl.").

to afford every other victim the opportunity to be heard as to their particular circumstances and then other victims the right to oppose any applications, invariably causing further delay that would burden all victims.

Assuming the Court even considers the merits of Mr. Gardi's motion, none of the grounds that Mr. Gardi asserts in support of his motion to modify the Second Amended Restitution Order to grant him a priority distribution over other victims support the extraordinary relief requested. First, Mr. Gardi asserts that he deserves different treatment because he is an "individual" rather than an "institutional" investor. Despite the fact that Mr. Gardi, individually, is listed as a victim on the Second Amended Schedule, he does not appear to be the actual victim of Dreier's fraud and, in any event, appears to have been transacting business when the fraud occurred through a limited liability company called Alex Interactive Media, LLC ("AIM", and together with Mr. Gardi, the "Gardi Parties"). When represented by Dreier as counsel, the Gardi Parties – not Mr. Gardi as an individual alone – rejected the settlement terms proposed by JANA Partners, LLC ("JANA"), an investment company that operated a series of hedge funds with more than $5 billion in assets under management as of June 2007, to resolve a dispute between them over an investment agreement. After Dreier forged the signatures of the Gardi Parties on a settlement agreement, the material terms of which the Gardi Parties had not approved, JANA wired approximately $6.3 million to the Dreier LLP Attorney Trust Account (x-5966). Thus, JANA appears to be the *actual* victim of Dreier's fraud, and the Gardi Parties were never entitled to JANA's money. Mr. Gardi's motion seeking priority treatment should be denied on this basis alone.

Second, Mr. Gardi attempts to distinguish the crime that Dreier committed against "him" from the crimes that Dreier committed against all of the other victims, including the Fortress

Victims, which suffered substantial out-of-pocket net losses as a result of Dreier's fraud, by stating that the crime was "completely unrelated to the Ponzi scheme Dreier perpetrated on the sophisticated institutional investors." 1/14/10 Gardi Mem. at 10. This characterization is belied by the fact that Dreier stole the money that JANA transferred precisely in order to keep his Ponzi scheme running. In his papers, in fact, Mr. Gardi alleges that Dreier used the JANA funds to make payments to other victims so that his scheme could continue. Dreier's theft of the $6.3 million simply cannot and should not under the circumstances be viewed as an isolated crime. Moreover, Mr. Gardi makes repeated assertions in his papers that sophisticated institutional investor victims, like the Fortress Victims, "voluntarily" surrendered title and control of their funds *to Dreier* and "lost capital willingly placed at risk *with Dreier*." 1/14/10 Gardi Mem. at 1-2 (emphasis added). This central premise for Mr. Gardi's motion is completely wrong with respect to the Fortress Victims. The Fortress Victims never intended for Dreier to have title and control of their funds. Dreier stole money from the Fortress Victims in the same way that he stole the money that JANA wired to the Dreier LLP Attorney Trust Account (x-5966). Both the Fortress Victims and JANA sent money to be held "for the benefit of" Dreier's client – in the case of the Fortress Victims, real estate companies owned by Sheldon Solow (the "Solow Entities"), and in JANA's case, the Gardi Parties. Just like Mr. Gardi, the Fortress Victims dealt with Dreier as an attorney and expected that he would be truthful and act consistent with his ethical obligations and duties. The plain fact here is that no victim authorized Dreier to do with their money what he wanted.

Lastly, Mr. Gardi argues that the impact of the Dreier crimes on the Gardi Parties is substantially greater than the impact on the other victims, such that *pro rata* distribution is not appropriate. This is despite the fact that the Government has stated its view that "no victim is

any more or less deserving" of the restitution in this case and every victim should, as set forth in the Second Amended Restitution Order, receive a *pro rata* share of the available restitution funds. *See* Declaration of Jacquelyn M. Burke, dated January 20, 2010 ("Burke Decl."), ¶ 2, Exh. A (1/12/10 Joint Hearing Tr.) at 15. While certainly one could envision extraordinary circumstances where disparate treatment of victims would be appropriate, those are not present here, especially where Mr. Gardi mischaracterizes the nature of the other victims and their financial resources and fails to disclose relevant information regarding his own financial position. The Fortress Victims respectfully submit that the more equitable approach, endorsed by the Government and this Court in the Amended and Second Amended Restitution Orders, is to distribute the available restitution funds on a *pro rata* basis to all of the victims identified in the Second Amended Schedule. All of Dreier's victims, whether institutional or individual, deserve to be treated fairly and equally.

## BACKGROUND

*The Restitution Order.* Following his arrest in Canada, on December 2, 2008, upon his return to the United States, Dreier was arrested and charged in a criminal complaint. On December 8, 2009, the Securities and Exchange Commission (the "SEC") filed a complaint against Dreier and Judge Cedarbaum appointed a receiver for Dreier's assets soon thereafter (the "Receiver"). On December 16, 2009, the Receiver filed a voluntary bankruptcy petition on behalf of Dreier's law firm, Dreier LLP.[2] On January 26, 2009 an involuntary bankruptcy petition was filed against Dreier personally. Both bankruptcy cases are now pending before Chief Judge Bernstein.

---

[2] On March 31, 2009, Mr. Gardi filed a proof of claim for $6,349,093.00 in the Dreier LLP bankruptcy proceeding. *See* Burke Decl. ¶ 3, Exh. B (Proof of Claim of Paul Gardi filed 3/31/09). John E. Stephenson of Alston & Bird LLP, who appeared before the Court on behalf of Mr. Gardi at the joint hearing on January 12, 2010, is listed on Mr. Gardi's proof of claim as counsel to whom notice should be sent. *Id.*

On March 11, 2009, Fortress received a letter from Wendy Olsen, Victim Witness Coordinator for the Government, indicating that law enforcement had identified Fortress as a victim in Dreier's criminal case and setting forth Fortress's rights under the Crime Victims' Rights Act, which included, among other things, "the right to full and timely restitution as provided by law." Burke Decl. ¶ 4, Exh. C.[3] On March 17, 2009, the Government filed a superseding indictment against Dreier, which included substantial forfeiture allegations. On May 11, 2009, Dreier pled guilty to all counts in the superseding indictment and his sentencing was scheduled for July.

On July 13, 2009, Dreier was sentenced by this Court to twenty years' imprisonment and ordered to pay $387,675,303 in restitution to the victims of Dreier's fraud. The schedule attached to the final judgment (the "Schedule") listed twenty-six victims of Dreier's fraud, including institutional investor victims and three individual victims, including Mr. Gardi, and their corresponding losses (Docket No. 84). The loss suffered by the Fortress Victims in the amount of $84,430,895.56 is listed in addition to the losses suffered by other institutional investors, entities, and individuals. Mr. Gardi's loss of $6,349,093.00 is listed in the Schedule, along with the name of his counsel, Craig Carpenito of the law firm of Alston & Bird LLP.

***The Second Amended Restitution Order.*** On September 29, 2009, this Court entered the Second Amended Restitution Order (Docket No. 93).[4] The Second Amended Restitution Order

---

[3] The facts surrounding the Fortress Victims' Dreier-related losses are set forth in greater detail in the sworn proofs of claim filed in the Dreier LLP bankruptcy proceeding. *See, e.g.,* Burke Decl. ¶ 5, Exh. D (Proof of Claim of Fortress Credit Opportunities I LP filed 3/30/09). In short, the Fortress Victims did not purchase notes from Dreier. Instead, the Fortress Victims entered into loan transactions, purportedly with the Solow Entities, and wired the loan proceeds to the Dreier LLP Attorney Escrow Account (x-5966) for the benefit of the Solow Entities, Dreier's purported client, *not* for the benefit of Dreier. As Fortress later learned upon Dreier's arrest, Dreier, in fact, was not representing the Solow Entities but instead stole the money sent by the Fortress Victims to fund his ongoing Ponzi scheme.

[4] The Second Amended Restitution Order amended the Amended Restitution Order entered by this Court on August 18, 2009 (the "Amended Restitution Order") (Docket No. 88). The Amended Restitution Order provided that restitution "shall first be paid to the victims listed" in an attached schedule (the "Amended Schedule"). *Id.* at

provided that restitution "shall first be paid to the victims listed" in the Second Amended Schedule. *Id.* at ¶ 1. The Second Amended Restitution Order further provided that if restitution was made in "partial payments, the victims shall receive payments on a *pro rata* basis according to the amounts listed" in the Second Amended Schedule. *Id.* The Second Amended Schedule listed twenty-six victims of Dreier's fraud and their corresponding losses. Among the victims were institutional investors and other entities, as well as four individual victims, including Mr. Gardi.

On December 4, 2009, this Court, along with Judge Cedarbaum and Chief Judge Bernstein, entered an order (the "December 4 Order") setting a joint hearing for January 12, 2010 (the "Joint Hearing") to address the progress of the criminal, SEC, and bankruptcy cases (Docket No. 95). In advance of the Joint Hearing, the Government filed an application (Docket No. 98) with the Court concerning its proposed settlement with the Dreier LLP and Dreier personal bankruptcy trustees, as well as a consent order of forfeiture with respect to GSO, an institutional investor that purchased notes as part of Dreier's fraud (Docket No. 96).

***Mr. Gardi First Raises His Motion.*** At the Joint Hearing, Mr. Gardi sought leave from the Court to bring the instant motion to modify the Second Amended Restitution Order and "depart from the presumptive *pro rata* distribution among all victims." Burke Decl. Exh. A at 12. Specifically, Mr. Gardi asked this Court to grant him priority over all other victims of Dreier's fraud and order that he be paid $6.3 million before any distributions are made to any

---

¶ 1. The Amended Restitution Order further provided that if restitution was made in "partial payments, the victims shall receive payments on a *pro rata* basis according to the amounts listed" in the Amended Schedule. *Id.* at ¶ 2. The Amended Schedule listed twenty-five victims of Dreier's fraud, and their corresponding losses. Among the victims were institutional investors, other entities, as well as three individual victims, including Mr. Gardi. The Amended Restitution Order also provided that after full restitution has been paid to the victims listed on the Amended Schedule, restitution for legal and investigative expenses incurred by Fortress and Eton Park Asset Management LLC shall be paid. *Id.* at ¶ 3; *see* 18 U.S.C. § 3663(b) ("The order may require that such defendant – … (4) in any case, reimburse the victim for … other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.").

other victims of Dreier's fraud. *Id.* In response to Mr. Gardi's request, the Government noted that this was the first time that it had heard of this particular application by Mr. Gardi. *Id.* at 15. The Government stated that Mr. Gardi was neither the only individual victim of Dreier's crimes nor was he the only client of Dreier's whose money was taken from them. *Id.* The Government further stated its view that it would not be "appropriate to prioritize any of these particular victims; *that there is a panoply of ways that people have their money stolen in this case*, and that no victim is any more or less deserving here of the restitution [and] that everybody should get a *pro rata* share." *Id.* (emphasis added). The Government also noted to the Court that the 90-day time period set forth in the restitution statute when victims are permitted to make an application to the Court had expired, and, as such, the Court should deny Mr. Gardi's application as time-barred. *Id.* This Court ultimately granted Mr. Gardi leave to file his motion by January 13, 2010 and also granted Fortress and other victims the opportunity to file objections to Mr. Gardi's motion one week later, by January 20, 2010. *Id.* at 22-23, 57.

***Mr. Gardi's Background and His Motion.*** Based on his public profile on LinkedIn, a popular on-line networking site, available at http://www.linkedin.com/pub/paul-gardi/2/78b/142, Mr. Gardi attended Harvard University for his undergraduate studies and Harvard Business School for his graduate studies. *See* Burke Decl. ¶ 6, Exh. E. Prior to becoming Managing Member at AIM, the entity that Mr. Gardi utilizes as an investment vehicle, Mr. Gardi was formerly Chief Executive Officer of IAC/InterActiveCorp Advertising Solutions, Executive Vice President and General Manager of Operations and Strategic Planning at Ask Jeeves, and President and Chief Operating Officer at Tacoma Technologies, Inc. *Id.*

According to his declaration, in June of 2007, the Gardi Parties brought a business opportunity to JANA, an investment company with more than $5 billion dollars in assets under

management.  *See* 1/14/10 Gardi Decl. at ¶ 6.  Following the closing of the deal, the Gardi Parties became involved in a dispute with JANA over amounts that they believed that they were owed pursuant to the terms of an investment agreement between them and JANA.  *Id.* at ¶ 8.  Mr. Gardi retained Dreier to represent the Gardi Parties in connection with the dispute.  *Id.* at ¶ 9.  In early October 2008, Mr. Gardi learned that JANA had agreed to the financial component of a potential settlement, the payment of $6,349,093.00 by JANA to the Gardi Parties, although a number of other settlement terms were in dispute and needed to be agreed upon before any money changed hands.  *Id.* at ¶ 11.  Thereafter, without Mr. Gardi's "knowledge, consent or authorization," Dreier advised JANA that Mr. Gardi had agreed to its terms and directed JANA to wire the $6.3 million in settlement funds intended for the benefit of the Gardi Parties to the Dreier LLP Attorney Trust Account (x-5966).  *Id.* at ¶ 12, ¶ 18.

## ARGUMENT

The Mandatory Victim Restitution Act ("MVRA") requires the sentencing court to impose restitution in "the full amount of each victim's losses, as determined by the court and without consideration of the economic circumstances of the defendant."  18 U.S.C § 3664(f)(1)(A).  Section 3664, which governs the procedure for the issuance and enforcement of the restitution order, provides that "the court shall set a date for the final determination of the victim's losses, *not to exceed 90 days after sentencing*."  18 U.S.C. § 3664(d)(5) (emphasis added).  The statute does, however, provide that a victim may "petition the court for an amended restitution order" if the victim thereafter discovers additional losses and shows good cause for not including those losses in the initial restitutionary request.  *Id.*  The basis for Mr. Gardi's motion to modify the Second Amended Restitution Order is not, as authorized by the statute, his discovery of additional losses.

Rather, relying on Section 3664(i), which states that "the court may provide for a different payment schedule for each victim based on the type and amount of each victim's loss and accounting for the economic circumstances of each victim," Mr. Gardi requests that this Court amend the Second Amended Restitution Order to change the presumed *pro rata* distribution of the restitution funds to all of the Dreier victims and provide him with a priority distribution of $6.3 million. *See, e.g., United States v. Catoggio*, 326 F.3d 323, 328 (2d Cir. 2003) ("Additionally, identifying victims prior to imposing restitution ensures that those victims receive the *pro-rata* share of the restitution funds to which they are entitled."). For the reasons set forth below, this Court should deny Mr. Gardi's motion.

## I. MR. GARDI'S LATE-FILED MOTION SHOULD BE DENIED

As stated above, the Second Amended Restitution Order was filed over three months before the Joint Hearing at which Mr. Gardi first raised his objection to the presumed *pro rata* distribution of restitution funds to all of Dreier's victims. Nowhere in Mr. Gardi's motion did he explain why he waited until now to claim priority over all other victims of Dreier's fraud, despite the fact that Mr. Gardi was represented by sophisticated counsel at least since March of 2009 and, presumably, received the same communications and level of out-reach from the Government and Probation that Fortress and other victims did well before the Second Amended Restitution Order was entered. Nor did Mr. Gardi's counsel adequately explain at the Joint Hearing or in the motion papers why he had not raised this issue with the Government or the Court before the expiration of the statutorily-imposed 90-day period or why he raised this issue for the first time only in the context of the Court reviewing the applications relating to the proposed settlement between the Government and the trustees and the Government and GSO.

If this Court were to grant Mr. Gardi's motion, it would invariably lead to further delay, as other victims, including the Fortress Victims, would want the same opportunity to make

motions seeking priority based on their particular circumstances, including where their monies went, and to protracted litigation, as these motions would likely be opposed by the Government and other victims seeking priority. Such motions would only circumvent the Government's efforts to make a partial distribution in short order to the Dreier victims, including Mr. Gardi.

While citing to this Court's inherent power to amend orders (1/14/10 Gardi Mem. at 1, n. 1), the fact remains that nowhere in his papers does Mr. Gardi adequately explain why over three months after the entry of the Second Amended Restitution Order, this Court should exercise its discretion to do so. Mr. Gardi's late-filed application to this Court upsets the Dreier victims' expectations under the Crime Victims' Rights Act that their rights "to full and timely restitution" and "to be treated with fairness" will be protected and that the limited assets presently available for distribution would be distributed *pro rata* consistent with the Second Amended Restitution Order. The victims of Dreier's fraud thought that any issue related to the distribution of restitution funds was well past consideration. Accordingly, Mr. Gardi's motion to modify the Second Amended Restitution Order should be denied.

## II. MR. GARDI SHOULD NOT BE GRANTED PRIORITY OVER ANY OTHER VICTIM OF DREIER'S FRAUD

Assuming that, notwithstanding its untimely nature, the Court decides to consider the merits of Mr. Gardi's application, Mr. Gardi has not offered a compelling reason for the Court to amend its prior order. As described above, it does not appear from the facts set forth in Mr. Gardi's declaration that Mr. Gardi is the actual victim of Dreier's fraud. Mr. Gardi specifically states that he never authorized the settlement agreement that JANA relied upon in disbursing the $6.3 million to the Dreier LLP Attorney Trust Account (x-5966). *See* 1/14/10 Gardi Decl. at ¶ 16. In fact, Mr. Gardi states that there remained a "number of material terms that had to be agreed upon before a settlement could be finalized." *Id.* at ¶ 11. Thus, Dreier obtained the $6.3

million from JANA by misrepresenting to JANA that the Gardi Parties had agreed to the settlement terms and by forging Mr. Gardi's signature. Since the $6.3 million never should have been sent by JANA to the Dreier LLP Attorney Escrow Account and the Gardi Parties had not finally agreed to the terms of the settlement pursuant to which JANA wired the money, JANA, not Mr. Gardi, appears to be the actual victim of Dreier's criminal conduct.[5]

Putting aside whether or not Gardi is the actual victim here, none of Mr. Gardi's arguments in support of his motion warrants the extraordinary relief that he seeks at the expense of the other fraud victims. Mr. Gardi proffers three central reasons why he is "distinct" from other victims, namely that "(i) he is an *individual* rather than a sophisticated *institutional* investor, (ii) the *crime* committed against him is both different in *nature* and completely *unrelated* to the Ponzi scheme Dreier perpetrated on the sophisticated institutional investors, and (iii) the *economic impact* of Dreier's crime against Gardi is substantially greater to Gardi than the impact on the institutional victims of the crimes against them." *Id.* (emphasis in original). For these reasons, Mr. Gardi asserts that he should receive a substantial priority distribution from the restitution fund, amounting to 100% recovery of his losses.

As an initial matter, Mr. Gardi is certainly not unsophisticated. Indeed, he conducts what appear to be complex business transactions through AIM. In the very transaction that gave rise to his losses here, Mr. Gardi transacted business with JANA, a hedge fund with $5 billion dollars in assets under management. If, for some reason, JANA is not the actual victim here, at the very

---

[5] Indeed, in the addendum to the proof of claim that Mr. Gardi filed in the Dreier LLP bankruptcy proceeding, he noted that: "[T]he Gardi Parties intend to commence an appropriate legal proceeding to resolve the Dispute with JANA. In that proceeding, the issues of whether the Gardi Parties are bound by the Fraudulent Settlement Agreement and whether the $6,349,093 Wire Amount belongs to JANA or to the Gardi Parties will be judicially determined." Burke Decl. Exh. B at 2. It would be particularly inappropriate for Mr. Gardi to receive priority distribution of the $6.3 million based on his individualized circumstances when the actual victim of Dreier's crime may very well be a totally separate entity.

least, AIM and Mr. Gardi, together, are the victims, not Mr. Gardi alone.[6]

Moreover, contrary to Mr. Gardi's assertions, Dreier's theft of monies transferred to the Dreier LLP Attorney Trust Account by JANA is not "a wholly unrelated theft of $6.3 million" from Dreier's Ponzi scheme. 11/14/10 Gardi Mem. at 1. That the theft of $6.3 million was part and parcel of Dreier's Ponzi scheme is demonstrated by the fact that Dreier used the funds intended to be sent to Mr. Gardi to make payments to other victims of his scheme. *See* 1/14/10 Gardi Mem. at 13. Dreier's theft of Mr. Gardi's money and his use of that money to keep his Ponzi scheme going and his law firm afloat are no different than Dreier's misappropriation of funds that the Fortress Victims wired to the same Dreier LLP Attorney Trust Account to be held for the benefit of the Solow Entities. Furthermore, the fact that Dreier, as Mr. Gardi's lawyer, owed him fiduciary duties, does not distinguish him from the Fortress Victims, which also dealt with Dreier as a lawyer, albeit a lawyer for the counterparty to loan transactions. In both cases, Dreier used his professional stature, law degree and his law firm to gain the trust of his clients and counterparties.

Moreover, Mr. Gardi repeatedly asserts that the type of loss that he suffered differentiates him from the institutional victims of Dreier's crime because they "knowingly transferred title and control of their funds to Dreier." 1/14/10 Mem. at 10; *see also id*. at 11 ("Moreover, *all* of the institutional victims knowingly transferred their funds to Dreier.") (emphasis in original). That is absolutely not true in the case of the Fortress Victims. The Fortress Victims never intended to transfer any of their funds *to Dreier* for his benefit. To the contrary, the Fortress

---

[6] In late 2007 and early 2008, Mr. Gardi participated with JANA in an attempted hostile takeover of CNET, a media company. JANA intended to nominate Mr. Gardi to CNET's board of directors as part of its takeover bid. *See* Henry Blodget, *CNET Hostile Takeover Details: Proposed Directors,* Jan. 7, 2008, available at http://www.businessinsider.com/2008/1/cnet-hostile-takeover-details-proposed-directors (Burke Decl. ¶ 7, Exh. F). CNET was later sold to CBS for $1.8 billion, indicating the level of sophistication at which Mr. Gardi operates. *See* Joseph Weisenthal, *Breaking: CBS Acquiring CNET for $1.8 Billion; 44.6 Percent Premium*, May 15, 2008, available at http://www.washingtonpost.com/wp-dyn/content/article/2008/05/15/AR2008051501033.html (Burke Decl. ¶ 8, Exh. G).

Victims intended, just like JANA, to transfer funds to a client of Dreier LLP when they wired funds to the Dreier LLP Attorney Escrow Account for the benefit of Dreier's client.

While there may be compelling circumstances in some cases that warrant deviation from the presumptive *pro rata* distribution, Mr. Gardi has failed to demonstrate such circumstances in his motion. Mr. Gardi, who appears to be a highly-educated and accomplished individual, states in a conclusory way that he "cannot absorb" the losses caused by Dreier "without extraordinary personal and professional hardship." 1/14/10 Gardi Mem. at 18. However, he does not provide any specific facts in support of his request for the extraordinary relief he requests, namely, departing from the presumed *pro rata* distribution.[7] Mr. Gardi simply has not made a sufficient showing that his financial circumstances are such that the Court should exercise its discretion in his favor.

Lastly, Mr. Gardi asserts that the losses suffered by the institutional investor victims constitute only a *de minimus* fraction of the institutional investors' assets, and lists Fortress as having a "value or net worth" of $32 billion. 1/14/10 Gardi Mem. at 16 n.11. However, as stated above, the Fortress Victims that suffered losses as a result of Dreier's crime are individual funds that are affiliated with Fortress and that are themselves owned by individual investors, several of whom are similar to Mr. Gardi. Thus, Mr. Gardi's comparison to the publicly-traded company, Fortress Investment Group LLC, as opposed to the Fortress Victims (FCOF UL

---

[7] Mr. Gardi primarily relies on *United States v. Jones*, 1987 U.S. Dist. LEXIS 3453 (S.D.N.Y. 1987) for the proposition that "in unique factual situations involving multiple victims, the court should depart from the presumption of the *pro rata* distribution." 11/14/10 Mem. at 13. Some of the individual victims in *Jones* that were arguing in favor of priority, however, were in such dire circumstances as to not be able to retain counsel, whereas here Mr. Gardi appears to have the means to retain a well-known national firm. *Jones,* 1987 U.S. Dist. LEXIS 3453 at *8. Moreover, in *Jones,* the court posed a hypothetical in which an individual was victimized to "near indigence" and stated that the circumstances of the victims in the case were "close enough" to such a scenario. *Id.* at *10. This does not appear to be the case here. Mr. Gardi also relies on *United States v. Perry,* 360 F.3d 519 (6th Cir. 2004); however, there, the Sixth Circuit did not rule on the district court's entry of a restitution order that "did not specify an order of priority among the victims," but only observed that a district could, under some circumstances, have the discretion to prioritize distribution. *Id.* at 522, 538.

Investments LLC and Fortress Credit Opportunities I LP), in an attempt to draw a vast distinction between the impact of the losses allegedly suffered by him and those suffered by institutional investors, is inapposite.

## CONCLUSION

In light of the foregoing, Fortress respectfully requests that this Court deny Mr. Gardi's motion for the entry of an order modifying the Second Amended Restitution Order to provide Mr. Gardi with priority in the distribution of funds pursuant to 18 U.S.C. § 3664(i), as doing so would unfairly elevate Mr. Gardi's restitution claim above the claims of all the other victims in this case.

Dated: New York, New York
January 20, 2010

FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP

By:   */s/ Howard W. Goldstein*
   Howard W. Goldstein

One New York Plaza
New York, New York 10004-1980
(212) 859-8000
howard.goldstein@friedfrank.com
  *Attorneys for Fortress Investment Group LLC*

7544452