# DAVID H. RELKIN

RELKIN LAW OFFICES

*David@RelkinLaw.com*                                                                           *www.RelkinLaw.com*

15 Stewart Place-12D
White Plains, New York 10018-3416
212.244.8722

February 9, 2016

**VIA ECF AND**
**FEDERAL EXPRESS**
Honorable Jed S. Rakoff
United States District Judge
United States Courthouse
500 Pearl Street, Room 1340
New York, New York 10007

Re:   **Paul Traub's Fraud on the Court and Vanishing Court Records in Dreier Cases**

To The Honorable Justice Jed S. Rakoff:

This firm is counsel for Steven ("Laser") Haas, a whistleblower,[1] who comes to this court to inform it of Bankruptcy Frauds and Frauds on the Court perpetrated by Paul Traub ("Traub"), and by parties associated with Traub's former law of firm, Traub Bonacquist & Fox ("TBF"), which was acquired[2] by Marc Dreier's law firm, Dreier LLP in 2006.

On December 7, 2015, counsel submitted a Corrected Notice of Appearance in Case No. 09-CR-085 (JSR) (the "NOA"), and, after analyzing the matters stated therein, it was readily apparent that a more comprehensive submission is in order. As this firm attempted to assist its client to provide documentary proof from the Public Access Court Electronic Records ("PACER") system, counsel witnessed an occurrence never seen before: vanishing PACER docket entries.

This office has spent months verifying the allegations of Laser against nationally significant and important entities and persons. In each and every instance counsel has not been able to find any fault with Laser's documentation or conclusions.

---

[1] The word "*whistleblower*" used herein, is utilized under the actual statute applicable to knowledge before, during and after the fact (specifically 18 USC §4, Misprision of a Felony), in that Laser has "knowledge of commission of a felony cognizable by a court of the United States," and, as such, is reporting the evidence by this letter to proper authorities, given that it directly impacts the Dreier assets available for his victims.
[2] See Complaint by Receiver of Tom Petters Ponzi scheme against Paul Traub, dated June 2012: http://petters-fraud.com/June2012_DKelley_PaulTraub_Complaint_Lawsuit_PettersFraud.pdf

The ghosting of records requires prompt attention so as to halt the additional destruction and obstruction of justice.[3]

It would appear from the evidence that Traub is a racketeering lackey for, at least Goldman Sachs and Bain Capital's partnership to deliberately destroy the eToys public company and, by bankruptcy schemes and Fraud, to devour the eToys.com bankruptcy estate.

These issues are germane to this Court's Marc Dreier related cases because Traub's former TBF law firm was "*acquired*" by Dreier LLP in 2006 and yet, a mere $60,000.00 payment from Traub was clawed back to the Marc Dreier federal case fiduciaries.

There is indisputable proof demonstrating that there was a ***Bankruptcy Ring*** (described hereinafter) that contained Traub, TBF, Tom Petters and Dreier LLP.

The docket records are vanishing apparently because the federal agents and agencies of justice that originally corroborated the extraordinary magnitude of the racketeering surrounding Traub, are failing and even now assisting Frauds on the Court in cases related to Dreier.

**Exhibit 1** to this letter is the Tom Petters' Ponzi Complaint brought by the Court-appointed Receiver of the Petters Ponzi Case in June 2012[4], against Paul Traub, which specifically states, at paragraph 3: "In 2006, Traub, Bonacquist & Fox LLP was acquired by Dreier L.L.P." ¶3.

The Petters' Receiver's Complaint goes on to state:

> "Traub was the founding member and managing partner of Traub, Bonacquist & Fox, LLP, a New York based law firm specializing in bankruptcy and business reorganization matters. There Traub represented creditors in the eToys.com bankruptcy. In 2005, his [Traub's] representation came under scrutiny when the U.S. Trustee and another party accused his law firm of a conflict of interest, non-disclosure of certain business relationships, and other misconduct. The U.S. Trustee ultimately settled with Traub's law firm, and the court approved."

Furthermore, and of no small consequence, paragraph "3" goes on to state that:

> "Although the court approved the settlement, the judge commented that the failure to disclose the serious conflicts present in Traub's case would in the future lead to sanctions."[5]

However, this threat of future sanctions by the eToys Bankruptcy Court was mere window-dressing. The Petters Ponzi Complaint against Traub has ramifications directly linked to the Marc

---

[3] The missing PACER documents are demonstrated hereafter by computer images of the PACER system.
[4] Kelley, as Receiver, et al. v. Traub, http://petters-fraud.com/June2012_DKelley_PaulTraub_Complaint_Lawsuit_PettersFraud.pdf
[5] See In re eToys, Inc., 331 B.R. 176 (Bank. D. Del. 2005).

Dreier Ponzi Case by, at the minimum, the Fingerhut Bankruptcy Case and the related entities of UBid, RedTag and Enable Holdings.[6]

Upon information and belief, the following entities were listed as being located at 655 Third Avenue, New York, which was the home office of TBF that had been "acquired" by Dreier LLP. Being that there are issues of Minnesota federal prosecutors being directly linked to the Petters Ponzi and the Fingerhut related entities and the fact that Fingerhut was not seized by those conflicted offices, then, perhaps, this court's Marc Dreier related cases may have a claim against Fingerhut, UBid, Enable Holdings and other entities that were defrauded by Traub and related parties.

This picture of evidence that has not yet vanished, at the minimum grants this Court the right to ask questions.

Asking questions of racketeers is how their untenable house of cards will fall.

[Screenshot of SEC Form 3 – Initial Statement of Beneficial Ownership of Securities, filed by Traub Paul, 655 Third Avenue, 21st Floor, New York, NY 10017, regarding uBid.com Holdings, Inc. (UBH), showing 22,500 shares of Common Stock.]

In paragraph 5 of the Petters Ponzi's Complaint it states that Traub "controlled" Tom Petters. Traub's *control* of Petters continued until 2008 when everything began to fall apart when everyone in the nationwide Enterprise of Ponzi Schemes realized that one of their bosses could not obtain absolute control of the Department of Justice.

---

[6] Upon information and belief, Traub and his firm were acquired by Dreier LLP while Traub was also a partner with Petters in Polaroid, UBid, Fingerhut and other companies, potentially doing hundreds of millions of dollars of business annually, during 2006, 2007 and 2008, prior to the arrest of Tom Petters in September 2008, and Marc Dreier's arrest in December 2008; and there is a staunch refusal to investigate this. The Petters Ponzi has clearly been downplayed by the Minnesota Department of Justice, to be no more than a $3.7 Billion Ponzi scheme despite the fact that it has been demonstrated to be at least $40 Billion in material adverse harm. (Petters Ponzi Polaroid complaint states that the losses were in excess of $40 Billion. http://petters-fraud.com/a_40_billion_stobner_seavermotion_suing_jp_morgan_denotes_pettersponzi.pdf
This downplay is plausibly due to the fact that the Minnesota Department of Justice is directly connected to the Petters Ponzi. This may also explain why, after Traub reorganized the ownership of Fingerhut, Inc. just several weeks before the FBI raided Petters, that Goldman Sachs and Bain Capital quickly infused $50 Million Dollars into Fingerhut to avoid it being taken in by the Petters' Receiver. Hence, the (willfully blind) authorities apparently decided to not seize Fingerhut and related companies such as UBid, or RedTag, etc.

As a result, in March 2008 panic ensued resulting in the shutdown of The Public Corruption Task Force and reported threats against career Federal Prosecutors to keep silent on the reasons why.[7]

An additional $100 Million fraud occurred when Ritchie Capital was victimized by a Polaroid investment scheme, which was almost immediately compounded by the Fingerhut $50 Million rushed cash infusion from Goldman, Sachs and Bain Capital. Speciously, Polaroid was seized and sold in a sham auction proceeding to Gordon Brothers, which then arranged for Traub to be a co-principal; but Fingerhut was never seized by the authorities.

In September 2008 the FBI raided and arrested Petters along with another dozen facilitators and cohorts. Then Dreier was arrested and Bernie Madoff's son rushed to confess his Ponzi in December 2008.

In paragraph "6" of the Petters Ponzi Complaint against Traub, it states:

> "Traub knew of the fraud, or willingly ignored it, and accepted substantial payments and gifts from the scheme, including payments in excess of $726,000 directly from Petters" personal accounts. In total, the Receiver seeks disgorgement of more than $803,966.00 in fraudulent transfers from the Receivership Estate to Traub".

This shows the problem glaringly displayed. How is it that a Federal fiduciary can make notes of the fact that Traub "*knew*" or "*willingly ignored*" a Ponzi scheme was transpiring, then the fiduciary goes out and slaps the wrist of Traub, and only sought to claw back $804,000.00, when it is documented that Traub benefited from the Petters Ponzi scheme by more than $2.4 million dollars, for his aiding and abetting. This was just a cost of doing "*bizness*" for the rackets; because corruption and cover ups are constantly blowing in the wind.

Minnesota Assistant United States Attorney James Lackner was the former head of the DoJ Criminal Division during the same time Laser was trying to blow the whistle about Traub's simultaneous partnership with Marc Dreier and Tom Petters.

James Lackner's brother, Marty, was part of the Lancelot Billion dollar feeder-fund to the Tom Petters Ponzi; but Tom Petters failed to admit this fact during his trial.

On August 2, 2009, the Pioneer Press, Twin Cities' publication, published article titled, appropriately, "What did the money man know?"[8] – that revealed the following facts:

"A TRAGIC TURN

> The Bell case took a tragic turn in June with revelations that a Bell associate named Martin Lackner had committed suicide. Sources say Lackner, 48, had helped bring investors to Lancelot earlier in the fund's genesis. There's no record he was charged with any crime. His wife, Diana, and three children survived him.

---

[7]
[8] http://www.twincities.com/alllistings/ci_12969455

> Martin Lackner is also the brother of Jim Lackner, an assistant U.S. attorney in the Minneapolis office. Jim Lackner declined comment. A spokesman for the U.S. attorney's office said Jim Lackner never worked on the Petters or Bell cases. When the U.S. attorney's office learned about Martin Lackner and his relationship to Jim, it notified defense attorneys for both Petters and Bell, he said".

- As for "What did the money man know," there are many flabbergasting questions that perturb the conscience.

- When did the Minnesota authorities know Marty Lackner was involved in Tom Petters Ponzi?

- At what point in time did Minnesota inform Washington, D.C., of this particular fact?

- How is it that the prosecution of Tom Petters was allowed to be in the venue of Minnesota?

- Was the untimely demise of Marty, really a suicide?[9]

- Why is it that the Petters Ponzi is always being downplayed by the authorities, who have touted it to be, only, a $3.7 Billion Ponzi Scheme when Michael Catain confessed to laundering $10 Billion Dollars and Larry ("Reservitz") Reynolds admitted to another money laundering of $12 Billion Dollars for Petters Ponzi while Reservitz was in Witness Protection Program?

- Why has Tom Petters never revealed to an Appellate Court the facts of Traub, Lackner and Larry ("Reservitz") Reynolds, in spite of the fact that Laser begged Tom Petters' family and counsel to state those facts publically?

- Why is the Prosecutor's office, which has personnel directly linked to the case, controlling the Courts to prevent Tom Petters from seeking a new trial?

**Disappearing PACER Docket Filings**
**Includes Entire Cosmetics Plus case**

As previously discussed in the NOA of December 7, 2015, upon information and belief, Traub has perpetrated a fraud on this Court cases by paying the Dreier LLP bankruptcy case Trustee an mere $60,000.00 payment from the *eToys v. Goldman Sachs* New York Supreme Court case 601805/2002.

At the minimum, Traub alone owes at least $1.2 million to the Marc Dreier cases victims. Then there are additional assets secreted by TBF's former associates: Susan Balaschak, Frederick Rosner, Steven Fox, Maura Russell, Michael Fox, Mark Minuti and Barry Gold, who are all part of the criminal conspiracy to defraud many estates by a Bankruptcy Ring.

Significantly, as stated by the Third Circuit, the Bankruptcy Code and Rules were modified precisely for the sake of preventing attorney fraud caused by failure to disclose conflicts. The Court

---

[9] Facts such as these are looming allegations of Laser, which, by their nature, counsel may only ask, but on which I cannot opine.

noted that in Bankruptcy Cases disclosure of conflicts of interest and the necessity of court approval of professional persons, is due to what Congress correctly noted was perhaps the most tempting aspect of bankruptcy practitioners' large case endeavors to devour estates as their own ATM cash machines.

Notably, the *Arkansas* Court[10] recognized the Congressional intent to prevent such conduct by stating:

> "It is significant that Congress chose to place the requirement of court approval for the employment of an attorney, accountant, or other professional by the creditors committee directly in the Bankruptcy Code in 1978. 11 U.S.C. Sec. 1103 (a). The legislative history makes clear that the 1978 Code was designed to eliminate the abuses and detrimental practices that had been found to prevail. Among such practices was the cronyism of the 'bankruptcy ring' and attorney control of bankruptcy cases. In fact, the House Report noted that '[i]n practice ... the bankruptcy system operates more for the benefit of attorneys than for the benefit of creditors.' H.R. No. 595, 95th Cong., 2d Sess. 92, reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5963, 6053."

> "As detailed in the House Report, the official committee of unsecured creditors whose function was (and still is) to negotiate with the debtor in possession in the formulation of a plan was elected by the unsecured creditors, much as the trustee was elected in a liquidation case. Although the members of the committee are not compensated, ***the counsel to the creditors' committee is paid, and, as described by the Report, 'it is a lucrative position.'***" (Emphasis added.)

### The eToys Action Against Goldman Sachs
### Creates a Massive Looming Catastrophe

Perhaps the single most important aspect of the eToys bankruptcy case racketeering ring was its cause of action against Goldman Sachs, the lead underwriter in eToys IPO. Goldman could not, under any circumstances aford lose this case which would have had massive ripples in the IPO industry which is one of the most profitable aspects of Investment income, in the Trillions of Dollars annually. Thus, in essence, Goldman had to stack the deck.

Goldman Sachs managed to conceal alliances of counsel so that Goldman Sachs actually sued itself in the New York Supreme Court; this is demonstrated by connecting the dots between Morris Nichols Arsht & Tunnell ("MNAT"), the eToys court-approved Debtor's counsel, which was secretly counsel for Goldman Sachs.[11]

---

[10] In re Arkansas, 798 F.2d 645, 649 (1986)
[11] MNAT has since confessed the fact that the firm failed to disclose its simultaneous representation of Goldman Sachs in the Delaware Bankruptcy case of Finova (#01-705) while MNAT was representing eToys in case 01-706. It is interesting that both of these cases were filed by MNAT on the same day.

MNAT hand-picked TBF to be the party to sue Goldman Sachs on behalf of the Estate. This was a clear attempt to conceal from the eToys estate the fact that Goldman Sachs was suing Goldman Sachs, and this assured the demise of the eToys public company. The New York Court of Appeals found that eToys had stated a cause of action against Goldman Sachs, by alleging, among other things, breach of fiduciary duty because:

> "a cause of action for breach of fiduciary duty may survive, for pleading purposes, where the complaining party sets forth allegations that, apart from the terms of the Contract [the underwriting contract] the underwriter and issuer created a relationship of higher trust than would arise from the underwriting agreement alone."[12]

The backdrop to this action was egregious: Goldman Sachs, found to be a fiduciary for eToys, underpriced the eToys IPO stock at $20/share, and bet on the price hitting $80/share, when it actually hit $85/share.

Arguably, given the solid evidence at hand, if Laser was reinstated in his chair as head of eToys, he could settle the eToys v. Goldman Sachs New York Supreme Court litigation for $300 million or more. This is germane to the Marc Dreier cases because Traub fraudulently utilized Dreier in the eToys v. Goldman, Sachs case.



---

[12] EBI I, Inc. f/k/a eTOYS, Inc. etc. v. Goldman, Sachs & Co., 5 NY3d 11, 20, 799 NYS2d 170 (June 7, 2005). This case was dismissed by the Appellate Division after Goldman made a Motion for summary judgment, 91 AD 3d 211, 936 NYS2d 92 (1st Dept. 2011), but then the Court of Appeals again granted eTOYS' Motion for leave to appeal by motion no. 2012-656, on Sept. 6, 2012, and granted the Motion by Securities Industry and Financial Markets Association for leave to file a brief amicus curiae on the appeal, 21 NY3d 896, 965 NYS2d 783 (April 25, 2013). This Case was settled within sixty days of the date the Court of Appeals agreed to hear the case for pennies on the dollar without any precedential value. It is indisputable that the Court of Appeals was going to overturn the Appellate Division since why would it grant the Motion to Appeal by eTOYS if the Appellate Division had already dismissed the action? This is the most pernicious result of this Case. Even if the Court of Appeals sought to modify the Decision of the First Department, the risk was too enormous that the Court of Appeals could rewrite the books on Underwriting to find that client's may be owed a fiduciary duty by an Underwriter. The parties settled that month, before the Court of Appeals could hear the case.

After TBF was acquired by Dreier LLP (as shown above) Traub also defrauded the Dreier LLP Bankruptcy Case by erroneously testifying concerning the Cosmetics Plus Case owners, the Bartoshs were entitled to be compensated for $300,000.00; in which an appeal was filed on January 26, 2016.

Unfortunately, at the present time, I am unable to properly document the extent of the fraud on this court's related cases, such as the *Cosmetics Plus Group Ltd.*, (Case # 01-14471) (SDNY Bank.) since the entire PACER docket record has evaporated from public view in Cosmetics Plus. Upon any query be either counsel or client, from different locations across the country, into the PACER docket filings, of the *Cosmetics Plus* case, the following results appear:



Additionally, in the *Cosmetics Plus* case, upon accessing the PACER "Text" field, within a docket filing, the response is similarly truculent, shown by this additional example stating "could not be accessed from the database":

